**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| KATASI, LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 3:26-cv-2159 |
| STATE FARM AUTOMOBILE | § | |
| INSURANCE COMPANY, | § | |
| | § | |
| *Defendant.* | | |

**PLAINTIFF KATASI, LLC'S
COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Katasi, LLC, (Katasi) by and through its attorneys, brings this action and makes the following allegations of patent infringement relating to United States Patent No. 11,638,198 (the "'198 Patent"), 10,506,091 (the "'091 Patent"), and 11,643,088 (the "'088 Patent") (collectively, "Katasi's Patents" or "Katasi Patents"). *See* Exs. A-C, respectively. Defendant State Farm Automobile Insurance Company ("State Farm") infringes Katasi's Patents in violation of the patent laws of the United States of America, 35 U.S.C. § 1, *et seq*.

**PARTIES**

1.      Plaintiff Katasi is a Colorado Limited Liability Company with its headquarters located at 4891 Curie Court, Boulder, Colorado, United States.

2.      Upon information and belief, Defendant State Farm is an insurance corporation organized and existing under the laws of the State of Illinois, with its principal place of business located at One State Farm Plaza, Bloomington, IL, 61710. Defendant State Farm may be served with process through Corporation Service Company at 211 E 7th Street, STE 620, Austin, TX, 78701.

## JURISDICTION AND VENUE

3.     This is an action for patent infringement arising under the patent laws of the United States of America, Title 35, United States Code.

4.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.     Upon information and belief, Defendant is subject to this Court's general and/or specific personal jurisdiction because they (a) have committed acts of infringement in the State of Texas as alleged below; and/or (b) are engaged in continuous and systematic activities in the State of Texas.

6.     Venue is proper in this district under 28 U.S.C. § 1400(b). On information and belief, Defendant State Farm has committed acts of infringement in this District as set forth below. On information and belief, customers use Defendant State Farm's Accused Instrumentalities (defined below) in this District, and Defendant State Farm both provides for and directs its customers to use its Accused Instrumentalities in this District.   On information and belief, Defendant State Farm also has operated, and currently operates its CityLine location at 1251 State Street, Richardson, TX 75082, TX[1].  Upon information and belief, this location is a 2.1 million square foot regional hub, in which State Farm employs at least 12,000[2].

7.     In particular, Defendant has committed and continues to commit acts of infringement in violation of 35 U.S.C. § 271, and has made, used, marketed, distributed, offered for sale, sold, and/or imported infringing products in the State of Texas, including in this District, and engaged in infringing conduct within and directed at or from this District.  For example, Defendant has purposefully and voluntarily placed the Accused Instrumentalities into the

---

[1] https://citylinedfw.com/tenants/state-farm/
[2] https://business.richardsonchamber.com/list/member/state-farm-21122

stream of commerce with the expectation that the Accused Instrumentalities will be used in this District. The Accused Instrumentalities have been, and continue to be, distributed to and used in this District. Defendant's acts cause and have caused injury to Katasi, including within this District.

## BACKGROUND

8.     Scott Tibbitts is a named inventor on the Katasi Patents, and principal founder and Chief Executive Officer of Katasi. Mr. Tibbitts received a B.S. in Chemical Engineering from the University of Wisconsin in 1980. After graduation, he moved to Colorado to work as a nuclear weapons engineer, then subsequently in 1988 founded Starsys Research Corporation, a space motor company that became the world's leading supplier of mechanical systems for spacecraft. During his tenure Starsys grew from a garage-based, two-person business building thermal actuators, to 150 employees and $20M in yearly revenues, with a track record of 3,000 mechanisms flown on more than 300 spacecraft with an unprecedented 100% success rate.

9.     Starsys merged with SpaceDev, and subsequently Sierra Nevada Corporation, now under a $2B+ contract to NASA to build Dreamchaser, a replacement for the Space Shuttle. Mr. Tibbitts continued his leadership in the company post-acquisition as Managing Director from 2006-2008.

10.     In 2008, Mr. Tibbitts' friend and colleague Dave Sueper was killed by a distracted driver shortly before he and Mr. Tibbitts were expecting to meet. The distracted driver was texting at the time, and this tragedy motivated Mr. Tibbitts to find a solution to this life-destroying problem.

11.     In 2009 Mr. Tibbitts founded Katasi, a company focused on reducing distracted driving through intelligent interaction between vehicles and mobile devices. Years before distracted driving became the social crisis it is today, Katasi began developing solutions and

devices capable of determining when a vehicle was in motion, identifying driver behavior, communicating with mobile devices, monitoring phone use while driving, providing scoring of driver safety and selectively limiting phone functionality while driving.

12. Frank Tai is a named inventor on two of the Katasi Patents, and a founder and technical lead of Katasi. Frank Tai is an inventor, engineer, and technology company founder with extensive experience in aerospace systems, autonomous navigation, control systems, satellite operations, and mobile-device safety technologies. He holds an M.S. in Mechanical Engineering / Automatic Controls from M.I.T. and a B.S. in Mechanical Engineering with honors from the University of California, Berkeley. At Katasi, Mr. Tai developed hardware and software technologies directed to detecting and preventing cellphone texting while driving, resulting in multiple patents, including patents directed to selectively preventing non-emergency use of electronic devices and controlling mobile communication devices in moving vehicles.

13. Before Katasi, Mr. Tai held senior technical and engineering roles at Technology Advancements, Inc., M.I.T., Microcosm, TRW, Ball Aerospace, and Lawrence Livermore Laboratory. His work included satellite guidance, navigation and control; autonomous navigation systems; spacecraft operations concepts; dynamic simulation; mission verification; launch and early mission operations; and real-time missile-analysis software. He has received multiple NASA awards and authored technical publications in guidance, navigation, control, satellite systems, and autonomous spacecraft technologies.

14. Adam Stevenson is a named inventor on one of the Katasi Patents and served as Katasi's Director of Technology from 2013 to 2015. He holds a B.S. in Computer Engineering from Penn State University, with honors in Aerospace Engineering, and completed graduate-level study in Computer Engineering and Aerospace Engineering at the University of Colorado Boulder.

At Katasi, Mr. Stevenson helped develop technology directed to reducing distracted driving by associating an occupant with a moving vehicle and enabling decisions about whether and how to suppress mobile-device distractions at the network level. His work included developing interfaces between vehicle-based devices and telecommunications systems to collect and evaluate data, including current vehicle/device information and historical behavior, in support of automated decision-making.

15.    Before Katasi, Mr. Stevenson spent more than fifteen years as a software and hardware engineer, architect, integration lead, and project lead on the SBIRS program under an SDS/Lockheed Martin contract. His work spanned system architecture, software development, integration and test, hardware lab architecture, production environments, and large-scale system integration, including responsibility for infrastructure supporting multiple software items across hundreds of millions of lines of code. That background gave him substantial experience in complex software systems, data-driven engineering, operational reliability, systems integration, and the development of practical tools and interfaces for high-consequence technical environments.

16.    Jafar Nabkel is a named inventor on two of the Katasi Patents, and senior technology professional with experience in systems architecture, product development, wireless communications, SaaS platforms, user-interface design, and requirements engineering. He holds an MBA in Technology Management from the University of Colorado Boulder Leeds School of Business, where he was affiliated with Beta Gamma Sigma, and studied Electrical Engineering and Computer Science / Computer Engineering at the University of Colorado Boulder, where he was active in Eta Kappa Nu, the electrical engineering honor society.

17.    Mr. Nabkel also served as a senior systems engineer and business process engineering manager at Magpie Telecom Insiders, where he worked on SaaS products, VoIP

technologies including IMS and SIP, wireless systems including GSM, GPRS, and CDMA, web technologies, and storage-area-network technologies.

18.    These technological solutions eventually became the basis for a portfolio of more than fourteen patents covering vehicle detection systems, controllable mobile devices, driver identification, safety scoring, and mobile-device management while driving.

19.    Mr. Tibbitts and Katasi worked extensively to commercialize their technology through pilots, deployments, and partnerships with major corporations around the world, working with other companies to address the growing distracted driving crisis.

20.    By 2014, Katasi had attracted extraordinary public attention due to both the effectiveness and boldness of the technology. Distracted driving had become a growing national concern, with Katasi being featured on the front page of the business section of The New York Times[3] examining the dangers of smartphone distraction and the technologies designed to stop it, and being the focus of an investigative news segment with Katie Couric both of which led to international awareness and partnerships to deploy the Katasi technology. Within a year of the international press, Katasi became aware of insurance companies developing and deploying products based on Katasi innovations.

21.    Katasi created and launched Groove in 2015 to make the technology commercially available to the public, piloting the technology with Sprint, Verizon, Ready Wireless and Telstra in Australia.  Groove comprised a small transponder device that was installed in the driver's vehicle that connected via Bluetooth to the driver's phone, as well as directly to the driver's mobile phone provider by a telematics connection. When the car began to drive, the transponder device

---

[3] https://www.nytimes.com/2014/09/14/business/trying-to-hit-the-brake-on-texting-while-driving.html

sensed movement via an accelerometer or directly from the car electronics. A Bluetooth connection to the driver's phone established the location of the phone. Other patented approaches to identifying the driver that augmented the Bluetooth-derived location were heuristics concerning learned driving patterns which were then used to ID the driver, such as the time of day of the drive, the location of the start of the drive, driving speeds, hardness of braking, and more. With the driver identified, some functionalities of the phone were lessened by software on the phone, or from the Telco provider, or phone use while driving was monitored Groove then provided a safe driving score that could be used by insurance companies to provide rewards and/or insurance discounts to the driver. Groove was piloted by Sprint in 2016, and was first commercially available from Ready Wireless in 2017, and then directly from Katasi in 2019, where it was deployed by JB Hunt transportation. Groove's JB Hunt deployment provided more than 10,000,000 miles of safe driver protection for JB Hunt drivers.

22.    In 2021, as a result of COVID, JB Hunt ceased deploying Groove, as monitoring and lessening phone use while driving limited JB Hunt's ability to onboard new drivers, a critical strategic challenge for them during COVID. Katasi paused its deployment of Groove after the JB Hunt termination.

23.    The innovations by Mr. Tibbitts and Katasi were the subject of many patents, including the Katasi Patents, and Katasi seeks to protect its investments in research and development.

### THE '198 PATENT

24.    U.S. Patent No. 11,638,198 ("the '198 Patent") is entitled "Method and system for controlling a mobile communication device in a moving vehicle" and was issued on April 25, 2023. A true and correct copy of the '198 Patent is attached as Exhibit A.

25.    The '198 Patent was filed on June 6, 2022, as U.S. Patent Application No. 17/833,265.

26.    Katasi is the owner of all rights, title, and interest in and to the '198 Patent, with the full and exclusive right to bring suit to enforce the '198 Patent, including the right to recover for past infringement.

27.    The '198 Patent is valid and enforceable under United States Patent Laws.

28.    The '198 Patent has a terminal disclaimer as to U.S. Pat. No. 10,172,070, which itself has a terminal disclaimer as to U.S. Pat. No. 9,451,447, which itself has a terminal disclaimer as to U.S. Pat. No. 8,787,936. U.S. Pat. No. 8,787,936 (and therefore the '198 Patent) is anticipated to expire on July 21, 2030.

29.    The '198 Patent discloses, among other things, "a method and system for detecting, monitoring and/or controlling one or more of mobile services for a mobile communication device [], and in particular, when the device is being used and the vehicle, operated by the user of the device, is moving." Exhibit A at Abstract. The '198 Patent also discloses the use of a "transponder (also known in the art as a 'tag,')" *Id* at 24:5-6, 27:37-38.

30.    In discussing solutions to distracted driving, the '198 Patent recognized various shortcomings of existing systems. As one example, the '198 Patent states that "[s]uch a network-based method and system can provide advantages over other arrangements which exclusively rely on software in the mobile communication device (which could be compromised)." *Id* at 3:44-49. Indeed, the '198 Patent explains that "the Vehicle Detection System (VDS) 30 may be operational to provide a vehicle motion sensor 305 capability which senses when the vehicle is in motion." *Id* at 25:16-19. "Examples of vehicle motion sensing 305 functionality include, but are not limited

to, an accelerometer, a GPS tracking device, the speedometer built-in to the vehicle, or other similar motion sensing devices." *Id* at 25:26-30.

31. The claims of the '198 Patent focus on the electronic transponder device (*i.e.*, the 'tag'), the components of the tag, the placement of the tag, and how the tag interacts with a separate cellular phone for the purposes of a safe driving solution.

### THE '091 PATENT

32. U.S. Patent No. 10,506,091 ("the '091 Patent") is entitled "Method and system for controlling a mobile communication device" and was issued on December 10, 2019. A true and correct copy of the '091 Patent is attached as Exhibit B.

33. The '091 Patent was filed on June 23, 2016, as U.S. Patent Application No. 15/191,286.

34. Katasi is the owner of all rights, title, and interest in and to the '091 Patent, with the full and exclusive right to bring suit to enforce the '091 Patent, including the right to recover for past infringement.

35. The '091 Patent is valid and enforceable under United States Patent Laws.

36. The '091 Patent has a terminal disclaimer as to U.S. Pat. No. 9,451,447, which itself has a terminal disclaimer as to U.S. Pat. No. 8,787,936. U.S. Pat. No. 8,787,936 (and therefore the '091 Patent) is anticipated to expire on July 21, 2030.

37. The '091 Patent discloses, among other things, a "method and system for detecting, monitoring and/or controlling one or more of mobile services for a mobile communication device (also referred to herein as a Controllable Mobile Device or CMD), and in particular, when the device is being used and the vehicle, operated by the user of the device, is moving." Exhibit B at Abstract. The '091 Patent also discloses "systems to be able to identify individuals within the vehicle, or identify the drivers of the vehicles, either by identifying that a CMD is within the

vehicle through the techniques described herein, or by identifying the driver of the vehicle through the techniques described herein." *Id.* at 6:37-42.

38.    The claims of the '091 Patent focus on the detection and determination of who is operating a vehicle independently from a cellular phone.

### THE '088 PATENT

39.    U.S. Patent No. 11,643,088 ("the '088 Patent") is entitled "Method and system for controlling and modifying driving behaviors" and was issued on May 9, 2023. A true and correct copy of the '088 Patent is attached as Exhibit C.

40.    The '088 Patent was filed on July 11, 2022, as U.S. Patent Application No. 17/861,963.

41.    Katasi is the owner of all rights, title, and interest in and to the '088 Patent, with the full and exclusive right to bring suit to enforce the '088 Patent, including the right to recover for past infringement.

42.    The '088 Patent is valid and enforceable under United States Patent Laws.

43.    The '088 Patent has (through a series of continuations and continuation in part applications that can be seen on the face of the '088 Patent) a priority date of July 21, 2009, and an anticipated expiration date of July 21, 2030.

44.    The '088 Patent discloses, among other things, "a method and system for detecting, monitoring and/or controlling one or more of mobile services for a mobile communication device (also referred to herein as a Controllable Mobile Device or CMD), and in particular, when the device is being used and the vehicle, operated by the user of the device, is moving." Exhibit C at Abstract. The '088 Patent also discloses the use of a "transponder (also known in the art as a 'tag,')" *Id* at 29:33-34, 32:65-66.

45.     In discussing solutions to distracted driving, the '088 Patent recognized various shortcomings of existing systems. As one example, the '198 Patent states that "[s]uch a network-based method and system can provide advantages over other arrangements which exclusively rely on software in the mobile communication device (which could be compromised)." *Id* at 3:54-57. Indeed, the '088 Patent explains that "the Vehicle Detection System (VDS) 30 may be operational to provide a vehicle motion sensor 305 capability which senses when the vehicle is in motion." *Id* at 30:43-46. "Examples of vehicle motion sensing 305 functionality include, but are not limited to, an accelerometer, a GPS tracking device, the speedometer built-in to the vehicle. or other similar motion sensing devices." *Id* at 30:53-56.

46.     The claims of the '088 Patent focus on the electronic transponder device (*i.e.*, the 'tag'), the components of the tag, and how the tag interacts with a network-based data processing system and a separate cellular phone for the purposes of a safe driving solution.

## THE INVENTIONS CLAIMED IN THE KATASI PATENTS WERE NOT WELL-UNDERSTOOD, ROUTINE, OR CONVENTIONAL

47.     The Katasi Patents each claim priority back to July 21, 2009. The deficiencies with existing systems for driving solutions are well documented, and the inventive concepts of the Katasi Patents cannot be considered to be conventional, well-understood, or routine. *See, e.g.*, Exhibit A at 2:44-3:60. The Katasi Patents disclose, among other things, unconventional solutions to problems arising in the context of distracted driving and cellular device usage, and explicitly identify the problems with prior art systems, namely that they relied on software within the mobile phone, that such software (existing on the phone) was trusted to disable the mobile phone, the inherit vulnerability of the mobile device to malware and other attacks, the overly broad approach to disablement of the phone, the inability to distinguish who is driving the vehicle from an otherwise permissible user of a cellular phone (*i.e.*, a passenger), and more. *See, e.g.*, *id*.

48.     To address one or more deficiencies with existing systems, the inventions of the Katasi Patents offered technological solutions to the ever-growing technical problem of cellular device usage, identification, and disablement while operating a motor vehicle.

49.     In particular, the inventions of the '198 and '088 Patents are directed to a specific transponder device with a battery, accelerometer, memory, and controller. Additionally, this transponder device provides a specific, unconventional solution for removing some of the reliance on the cellular phone, and its aforementioned vulnerabilities and flaws, from the distracted driving solution. *See, e.g.*, Exhibit A at Claims 1, 4, 15, 19. In this respect, the inventions of the '198 and '088 Patents are directed to a specific technical solution to the technical problem of cellular device usage, identification, and disablement.

50.     The inventions of the '091 Patent are directed to detectors for wirelessly detecting a mobile device and characteristics of the vehicle indicative of the vehicle being operated, and computational equipment using those detectors to determine the identity of the driver. *See, e.g.,* Exhibit B at Claim 1. This is a hardware-based solution narrowly tailored to the technical problem of correctly identifying the vehicle operator. Moreover, the dependent claims have additional limitations directed to additional problems in the prior art, such as a data management system operated independently of a wireless service provider and network (claim 5), and a limitation that requires the computational equipment to not be on the cellular phone (claims 8-10).

51.     Additionally, the identification of the driver allows for differentiation between a driver and a passenger (and subsequently, not considering a passenger's phone usage). One major hurdle to distracted driving solutions at the time was consumer irritancy and subsequent override features which trust a user to identify when they are merely a passenger, and not the driver. Ex. B

at 3:4-14. The inventions of the '091 Patent solve this problem, preventing overreaching restrictions to individuals not driving a vehicle.

52.    These are just exemplary reasons why the inventions claimed in the Katasi Patents were not well-understood, routine, or conventional at the time.

### COUNT I: INFRINGEMENT OF U.S. PATENT NO. 11,638,198

53.    Plaintiff incorporates paragraphs 1-52 as though fully set forth herein.

54.    Defendant State Farm has infringed and is infringing, either literally or under the doctrine of equivalents, at least Claims 1, 4, 15, and 19 of the '198 Patent in violation of 35 U.S.C. § 271 *et seq.*, directly and/or indirectly, by making, using, offering for sale, or selling in the United States, and/or importing into the United States without authority or license, the "Drive Safe & Save" Bluetooth beacon (collectively referred to herein as the "Tag Products") and related software support therefor, that infringe at least one or more claims of the '198 Patent. *See, e.g.,* https://www.statefarm.com/customer-care/download-mobile-apps/drive-safe-and-save-mobile. Plaintiff also accuses the "Drive Safe and Save Business" platform of substantially similar infringement.

55.    As just one non-limiting example, set forth in Exhibit D[4] is exemplary evidence of infringement of Claim 19 of the '198 Patent in connection with the Tag Products. This description is based on publicly available information. Katasi reserves the right to modify this description, including, for example, on the basis of information about the Tag Products that it obtains during discovery.

---

[4] An element-by-element pleading is not required of Katasi at this stage; Katasi provides Exhibits D and E merely to articulate why it is plausible that the accused instrumentalities infringe the Katasi Patents.



56.    Additionally, Defendant State Farm has been and/or currently is an active inducer of infringement of the '198 Patent under 35 U.S.C. § 271(b) and contributory infringer of the '198 Patent under 35 U.S.C. § 271(c).

57.    State Farm's end-user customers directly infringe at least one or more claims of the '198 Patent by using the Tag Products in their intended manner to infringe.

58.    Additionally, State Farm contributorily infringes at least one or more claims of the '198 Patent by providing the Tag Products and/or software components thereof, that embody a material part of the claimed inventions of the '198 Patent, that are known by State Farm to be specially made or adapted for use in an infringing manner and are not staple articles with substantial non-infringing uses. The Tag Products are specially designed to infringe at least one or more claims of the '198 Patent, and their accused components have no substantial non-infringing uses. In particular, on information and belief, the software modules and code that implement and perform the infringing functionalities identified above are specially made and adapted to carry out said functionality and do not have any substantial non-infringing uses.

59.    At least as early as the filing and/or service of this Complaint, State Farm's infringement of the '198 Patent was and continues to be willful and deliberate, entitling Katasi to enhanced damages.

60.    Additional allegations regarding State Farm's knowledge of the '198 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

61.    Katasi is entitled to recover from State Farm all damages that Katasi has sustained as a result of State Farm's infringement of the '198 Patent, including, without limitation, a reasonable royalty.

62.    Katasi is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '198 Patent. Katasi further states that the patentee did not make, sell, or import any physical articles covered by the '198 Patent since its issuance.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 10,506,091

63.    Plaintiff incorporates paragraphs 1 through 62 as though fully set forth herein.

64.    Defendant State Farm has infringed and is infringing, either literally or under the doctrine of equivalents, the '091 Patent in violation of 35 U.S.C. § 271 *et seq.*, directly and/or indirectly, by making, using, offering for sale, or selling in the United States, and/or importing into the United States without authority or license, products that operate with driver identity detection (collectively referred to herein as the "Detection Products") and related software support therefor, that infringe at least claims 1, 8-10, 19, and 25 of the '091 Patent. *See, e.g.* https://www.statefarm.com/simple-insights/auto-and-vehicles/usage-based-car-insurance-for-multiple-drivers and https://www.statefarm.com/customer-care/download-mobile-apps/drive-safe-and-save-mobile. Plaintiff also accuses the "Drive Safe and Save Business" platform of substantially similar infringement.

65.     Katasi also incorporates the attached preliminary claim chart, Exhibit E to further demonstrate the infringing functionality. The statements and descriptions in Exhibit E are based on publicly available information. Katasi reserves the right to modify its statements and descriptions, including, for example, on the basis of information about the Detection Products that it obtains during discovery.

66.     Additionally, Defendant State Farm has been and/or currently is an active inducer of infringement of the '091 Patent under 35 U.S.C. § 271(b) and contributory infringer of the '091 Patent under 35 U.S.C. § 271(c).

67.     Additionally, State Farm contributorily infringes at least one or more claims of the '091 Patent by providing the Detection Products and/or software components thereof, that embody a material part of the claimed inventions of the '091 Patent, that are known by State Farm to be specially made or adapted for use in an infringing manner, and are not staple articles with substantial non-infringing uses. The Detection Products are specially designed to infringe at least one or more claims of the '091 Patent, and their accused components have no substantial non-infringing uses. In particular, on information and belief, the software modules and code that implement and perform the infringing functionalities identified above are specially made and adapted to carry out said functionality and do not have any substantial non-infringing uses.

68.     Additional allegations regarding State Farm's knowledge of the '091 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

69.     Katasi states that it is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '091 Patent.

70.     Katasi is entitled to recover from State Farm all damages that KATASI has sustained as a result of State Farm's infringement of the '091 Patent, including, without limitation, a reasonable royalty.

### COUNT III: INFRINGEMENT OF U.S. PATENT NO. 11,643,088

71.     Plaintiff incorporates paragraphs 1 through 70 as though fully set forth herein.

72.     Defendant State Farm has infringed and is infringing, either literally or under the doctrine of equivalents, the '088 Patent in violation of 35 U.S.C. § 271 *et seq.*, directly and/or indirectly, by making, using, offering for sale, or selling in the United States, and/or importing into the United States without authority or license, Tag Products that infringe at least claims 1-2, 5[5], 8-9, and 12-14 of the '088 Patent. *See, e.g.,* https://www.statefarm.com/customer-care/download-mobile-apps/drive-safe-and-save-mobile. Plaintiff also accuses the "Drive Safe and Save Business" platform of substantially similar infringement.

73.     Katasi also incorporates the attached preliminary claim charts[6] to the extent applicable to further demonstrate the infringing functionality. The statements and descriptions in those claim charts are based on publicly available information. Katasi reserves the right to modify its statements and descriptions, including, for example, on the basis of information about the Tag Products that it obtains during discovery.

74.     Additionally, Defendant State Farm has been and/or currently is an active inducer of infringement of the '088 Patent under 35 U.S.C. § 271(b) and contributory infringer of the '088 Patent under 35 U.S.C. § 271(c).

---

[5] At least for the Drive Safe and Save Business platform, which tracks multiple drivers and ranks them. https://www.statefarm.com/insurance/small-business/commercial-auto/business-drive-safe-and-save

[6] While these claim charts are for the '198 and '091 Patents, many of the limitations in the claims of the '088 Patent are similar to those in the '198 and '091 Patents, and the accused instrumentality is still the Drive Safe and Save platforms.

---

75.    Additionally, State Farm contributorily infringes at least one or more claims of the '088 Patent by providing the Tag Products and/or software components thereof, that embody a material part of the claimed inventions of the '088 Patent, that are known by State Farm to be specially made or adapted for use in an infringing manner, and are not staple articles with substantial non-infringing uses. The Tag Products are specially designed to infringe at least one or more claims of the '088 Patent, and their accused components have no substantial non-infringing uses. In particular, on information and belief, the software modules and code that implement and perform the infringing functionalities identified above are specially made and adapted to carry out said functionality and do not have any substantial non-infringing uses.

76.    Additional allegations regarding State Farm's knowledge of the '088 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

77.    Katasi is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '088 Patent. Katasi further states that the patentee did not make, sell, or import any physical articles covered by the '088 Patent since its issuance.

78.    Katasi is entitled to recover from State Farm all damages that Katasi has sustained as a result of State Farm's infringement of the '088 Patent, including, without limitation, a reasonable royalty.

### DEMAND FOR JURY TRIAL

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

(a)    A judgment in favor of Plaintiff that Defendant has directly infringed and/or has indirectly infringed by way of inducement of one or more claims of the Katasi Patents;

(b)    A judgment and order requiring Defendant to pay Plaintiff damages adequate to compensate for infringement under 35 U.S.C. § 284, which damages may include lost profits but in no event shall be less than a reasonable royalty for their usage made of the inventions of the Katasi Patents, including pre- and post-judgment interest and costs, including expenses and disbursements;

(c)    A judgment awarding treble damages against Defendant for willful infringement pursuant to 35 U.S.C. § 284;

(d)    A judgment awarding Plaintiff its costs as provided under Fed. R. Civ. P. 54(d)(1);

(e)    A judgment for pre- and post-judgment interest on all damages awarded;

(f)    A judgment awarding Plaintiff post-judgment royalties; and

(g)    Any and all such further necessary or proper relief as this Court may deem just and equitable.

Dated: June 29, 2026

Respectfully submitted,

**BUETHER JOE & COUNSELORS, LLC**

By:    */s/ Christopher M. Joe*
       Christopher M. Joe
       State Bar No. 00787770
       Chris.Joe@BJCIPLaw.com
       Michael W. Doell
       State Bar No. 24127525
       Mike.Doell@BJCIPLaw.com

       1700 Pacific Avenue
       Suite 4750
       Dallas, Texas 75201
       Telephone:    (214) 466-1272
       Facsimile:    (214) 635-1828

**ATTORNEY FOR PLAINTIFF**
**KATASI, LLC**