# Exhibit A



US011638198B2

(12) **United States Patent**
Tibbitts et al.

(10) **Patent No.:**     **US 11,638,198 B2**
(45) **Date of Patent:**        *Apr. 25, 2023

(54) **METHOD AND SYSTEM FOR CONTROLLING A MOBILE COMMUNICATION DEVICE IN A MOVING VEHICLE**

(71) Applicant: **Katasi Inc**, Boulder, CO (US)

(72) Inventors: **Scott Ferrill Tibbitts**, Niwot, CO (US); **Jafar Nabkel**, Longmont, CO (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **17/833,265**

(22) Filed: **Jun. 6, 2022**

(65) **Prior Publication Data**

US 2022/0303873 A1      Sep. 22, 2022

**Related U.S. Application Data**

(63) Continuation of application No. 16/236,436, filed on Dec. 29, 2018, which is a continuation of application
(Continued)

(51) **Int. Cl.**
**H04W 4/48**          (2018.01)
**H04W 48/04**          (2009.01)
(Continued)

(52) **U.S. Cl.**
CPC ....... ***H04W 48/04*** (2013.01); ***H04M 1/72454*** (2021.01); ***H04M 1/72463*** (2021.01);
(Continued)

(58) **Field of Classification Search**
CPC ................................ H04W 48/04; H04W 4/48
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

4,297,539 A     10/1981  Fairbanks
4,908,611 A      3/1990  Iino
(Continued)

FOREIGN PATENT DOCUMENTS

EP          0955210  A2    11/1999
EP          0940051  B1     8/2007
(Continued)

OTHER PUBLICATIONS

Advisement of Agreement to Arbitrate Claims and Stay Proceedings filed in District Court, Boulder County, Colorado, Case No. 2016CV30261 on Jun. 22, 2016, 2 pages.
(Continued)

*Primary Examiner* — Michael T Vu
(74) *Attorney, Agent, or Firm* — Messner Reeves, LLP; Scott J. Hawranek

(57)          **ABSTRACT**

Disclosed herein is a method and system for detecting, monitoring and/or controlling one or more of mobile services for a mobile communication device (also referred to herein as a Controllable Mobile Device or CMD), and in particular, when the device is being used and the vehicle, operated by the user of the device, is moving. The present method and system determines whether the vehicle is being operated by a user that may also have access to a mobile communication device which, if used concurrently while the vehicle is in operation, may lead to Service Provider System unsafe operation of the vehicle. If the mobile services control system determines that a vehicle operator has potentially unsafe access to a mobile communication device, the mobile services control system may restrict operator access to one or more services that would otherwise be available to the operator via the mobile communication device.

**24 Claims, 10 Drawing Sheets**



## US 11,638,198 B2

Page 2

### Related U.S. Application Data

No. 15/233,784, filed on Aug. 10, 2016, now Pat. No. 10,172,070, which is a continuation of application No. 14/336,282, filed on Jul. 21, 2014, now Pat. No. 9,451,447, which is a continuation of application No. 13/386,643, filed as application No. PCT/US2010/042793 on Jul. 21, 2010, now Pat. No. 8,787,936.

(60) Provisional application No. 61/267,064, filed on Dec. 6, 2009, provisional application No. 61/227,404, filed on Jul. 21, 2009.

(51) **Int. Cl.**

| | |
|---|---|
| *H04W 4/029* | (2018.01) |
| *H04M 1/72454* | (2021.01) |
| *H04M 1/72463* | (2021.01) |
| *H04W 8/22* | (2009.01) |
| *H04W 4/40* | (2018.01) |
| *H04K 3/00* | (2006.01) |

(52) **U.S. Cl.**
CPC ............. *H04W 4/029* (2018.02); *H04W 4/40* (2018.02); *H04W 4/48* (2018.02); *H04W 8/22* (2013.01); *H04K 3/415* (2013.01); *H04K 2203/22* (2013.01)

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,146,407 A | 9/1992 | Motohashi | |
| 5,148,153 A | 9/1992 | Haymond | |
| 5,191,312 A | 3/1993 | Altmann et al. | |
| 5,504,482 A | 4/1996 | Schreder | |
| 5,515,364 A | 5/1996 | Fague | |
| 5,519,410 A | 5/1996 | Smalanskas et al. | |
| 5,541,572 A | 7/1996 | Okamoto et al. | |
| 5,548,764 A | 8/1996 | Duley et al. | |
| 5,548,800 A | 8/1996 | Olds et al. | |
| 5,649,316 A | 7/1997 | Prudhomme et al. | |
| 5,749,052 A | 5/1998 | Hidem et al. | |
| 5,815,407 A | 9/1998 | Huffman et al. | |
| 5,842,124 A | 11/1998 | Kenagy et al. | |
| 5,852,775 A | 12/1998 | Hidary | |
| 5,862,476 A | 1/1999 | Hasegawa | |
| 5,864,757 A | 1/1999 | Parker | |
| 5,887,258 A | 3/1999 | Lemozit et al. | |
| 5,890,067 A | 3/1999 | Chang et al. | |
| 5,949,345 A | 9/1999 | Beckert et al. | |
| 5,963,550 A | 10/1999 | Hirata et al. | |
| 5,991,749 A | 11/1999 | Morrill, Jr. | |
| 6,011,973 A | 1/2000 | Valentine et al. | |
| 6,023,232 A | 2/2000 | Eitzenberger | |
| 6,028,537 A | 2/2000 | Suman et al. | |
| 6,085,096 A | 7/2000 | Nakamura | |
| 6,088,586 A | 7/2000 | Haverty | |
| 6,122,486 A | 9/2000 | Tanaka et al. | |
| 6,122,682 A | 9/2000 | Andrews | |
| 6,131,045 A | 10/2000 | Iwata | |
| 6,134,447 A | 10/2000 | Havinis et al. | |
| 6,154,172 A | 11/2000 | Piccionelli et al. | |
| 6,198,927 B1 | 3/2001 | Wright et al. | |
| 6,208,866 B1 | 3/2001 | Rouhollahzadeh et al. | |
| 6,222,458 B1 | 4/2001 | Harris | |
| 6,225,897 B1 | 5/2001 | Doyle et al. | |
| 6,230,017 B1 | 5/2001 | Andersson et al. | |
| 6,233,448 B1 | 5/2001 | Alperovich et al. | |
| 6,256,503 B1 | 7/2001 | Stephens | |
| 6,256,558 B1 | 7/2001 | Sugiura et al. | |
| 6,262,657 B1 | 7/2001 | Okuda et al. | |
| 6,263,190 B1 | 7/2001 | Mamori et al. | |
| 6,285,868 B1 | 9/2001 | Ladue | |
| 6,298,131 B1 | 10/2001 | Veschi | |
| 6,298,306 B1 | 10/2001 | Suarez et al. | |
| 6,301,484 B1 | 10/2001 | Rogers et al. | |
| 6,311,078 B1 | 10/2001 | Hardouin | |
| 6,314,282 B1 | 11/2001 | Weber et al. | |
| 6,343,212 B1 | 1/2002 | Weber et al. | |
| 6,343,213 B1 | 1/2002 | Steer et al. | |
| 6,353,778 B1 | 3/2002 | Brown | |
| 6,356,812 B1 | 3/2002 | Cragun | |
| 6,389,287 B1 | 5/2002 | Smith et al. | |
| 6,393,301 B1 | 5/2002 | Oda | |
| 6,418,309 B1 | 7/2002 | Moon et al. | |
| 6,421,544 B1 | 7/2002 | Sawada | |
| 6,438,385 B1 | 8/2002 | Heinonen et al. | |
| 6,456,822 B1 | 9/2002 | Gofman et al. | |
| 6,459,891 B1 | 10/2002 | Whinnett et al. | |
| 6,496,703 B1 | 12/2002 | Da | |
| 6,496,709 B2 | 12/2002 | Murray | |
| 6,505,046 B1 | 1/2003 | Baker | |
| 6,526,275 B1 | 2/2003 | Calvert | |
| 6,542,730 B1 | 4/2003 | Hosain | |
| 6,546,257 B1 | 4/2003 | Stewart | |
| 6,556,810 B2 | 4/2003 | Suzuki | |
| 6,580,973 B2 | 6/2003 | Leivian et al. | |
| 6,594,483 B2 | 7/2003 | Nykanen et al. | |
| 6,598,034 B1 | 7/2003 | Kloth | |
| 6,600,975 B2 | 7/2003 | Moriguchi et al. | |
| 6,643,517 B1 | 11/2003 | Steer | |
| 6,647,257 B2 | 11/2003 | Owensby | |
| 6,647,269 B2 | 11/2003 | Hendrey et al. | |
| 6,650,894 B1 | 11/2003 | Berstis et al. | |
| 6,678,516 B2 | 1/2004 | Nordman et al. | |
| 6,687,497 B1 | 2/2004 | Parvulescu et al. | |
| 6,687,506 B1 | 2/2004 | Girod | |
| 6,690,940 B1 | 2/2004 | Brown et al. | |
| 6,701,158 B2 | 3/2004 | Moreth | |
| 6,714,519 B2 | 3/2004 | Luzzatti et al. | |
| 6,721,542 B1 | 4/2004 | Anttila et al. | |
| 6,728,542 B2 | 4/2004 | Meda | |
| 6,731,925 B2 | 5/2004 | Naboulsi | |
| 6,771,946 B1 | 8/2004 | Oyaski | |
| 6,807,435 B2 | 10/2004 | Yamashita | |
| 6,816,731 B1 | 11/2004 | Maruyama | |
| 6,819,928 B1 | 11/2004 | Hokao | |
| 6,832,093 B1 | 12/2004 | Ranta | |
| 6,847,822 B1 | 1/2005 | Dennison et al. | |
| 6,885,869 B2 | 4/2005 | Raith | |
| 6,922,571 B1 | 7/2005 | Kinoshita | |
| 6,925,105 B1 | 8/2005 | Partyka | |
| 6,934,547 B2 | 8/2005 | Suzuki | |
| 6,961,561 B2 | 11/2005 | Himmel et al. | |
| 6,973,333 B1 | 12/2005 | O'Neil | |
| 6,978,136 B2 | 12/2005 | Jenniges et al. | |
| 7,003,525 B1 | 2/2006 | Horvitz et al. | |
| 7,006,793 B2 | 2/2006 | Himmel et al. | |
| 7,015,831 B2 | 3/2006 | Karlsson et al. | |
| 7,035,828 B2 | 4/2006 | Ketonen et al. | |
| 7,039,425 B1 | 5/2006 | Mazawa et al. | |
| 7,064,656 B2 | 6/2006 | Belcher et al. | |
| 7,072,753 B2 | 7/2006 | Eberle et al. | |
| 7,107,058 B2 | 9/2006 | Inoguchi et al. | |
| 7,110,749 B2 | 9/2006 | Zellner et al. | |
| 7,116,992 B1 | 10/2006 | Tsunehara et al. | |
| 7,123,874 B1 | 10/2006 | Brennan | |
| 7,149,627 B2 | 12/2006 | Ockerse et al. | |
| 7,181,228 B2 | 2/2007 | Boesch | |
| 7,181,229 B2 | 2/2007 | Singh et al. | |
| 7,187,953 B2 | 3/2007 | Bauchot et al. | |
| 7,206,615 B2 | 4/2007 | Ochi et al. | |
| 7,242,946 B2 | 7/2007 | Kokkonen et al. | |
| 7,260,390 B1 | 8/2007 | Skinner et al. | |
| 7,269,627 B2 | 9/2007 | Knauerhase | |
| 7,319,696 B2 | 1/2008 | Inoue et al. | |
| 7,330,895 B1 | 2/2008 | Horvitz | |
| 7,343,148 B1 | 3/2008 | O'Neil | |
| 7,349,782 B2 | 3/2008 | Churchill et al. | |
| 7,359,713 B1 | 4/2008 | Tiwari | |
| 7,359,714 B2 | 4/2008 | Parupudi et al. | |
| 7,369,845 B2 | 5/2008 | Keohane et al. | |
| 7,394,791 B2 | 7/2008 | Proctor, Jr. | |
| 7,395,046 B2 | 7/2008 | Hossain et al. | |
| 7,400,891 B2 | 7/2008 | Aaron | |

## US 11,638,198 B2

Page 3

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 7,403,785 | B2 | 7/2008 | Daniels et al. |
| 7,430,724 | B2 | 9/2008 | Othmer |
| 7,437,752 | B2 | 10/2008 | Heard et al. |
| 7,471,929 | B2 | 12/2008 | Fujioka et al. |
| 7,474,264 | B2 | 1/2009 | Bolduc et al. |
| 7,477,135 | B2 | 1/2009 | Belcher et al. |
| 7,505,784 | B2 | 3/2009 | Barbera |
| 7,619,507 | B2 | 11/2009 | Santos et al. |
| 7,640,101 | B2 | 12/2009 | Pair et al. |
| 7,734,315 | B2 | 6/2010 | Rathus et al. |
| 7,738,831 | B2 | 6/2010 | Nath et al. |
| 7,813,741 | B2 | 10/2010 | Hendrey et al. |
| 7,856,203 | B2 | 12/2010 | Lipovski |
| 7,876,205 | B2 | 1/2011 | Catten et al. |
| 7,903,029 | B2 | 3/2011 | Dupray |
| 7,979,057 | B2 | 7/2011 | Ortiz et al. |
| 8,000,689 | B2 | 8/2011 | Featherstone et al. |
| 8,045,976 | B2 | 10/2011 | Kiddie et al. |
| 8,103,292 | B2 | 1/2012 | Kelly et al. |
| 8,131,205 | B2 | 3/2012 | Rosen |
| 8,160,560 | B2 | 4/2012 | Geyer et al. |
| 8,224,353 | B2 | 7/2012 | Wright et al. |
| 8,285,308 | B1 | 10/2012 | Wright et al. |
| 8,359,005 | B2 | 1/2013 | Smith et al. |
| 8,471,706 | B2 | 6/2013 | Schuster et al. |
| 8,527,013 | B2 | 9/2013 | Guba et al. |
| 8,560,161 | B1 | 10/2013 | Kator et al. |
| 8,604,920 | B2 | 12/2013 | Armitage et al. |
| 8,761,821 | B2 | 6/2014 | Tibbitts et al. |
| 8,787,936 | B2 | 7/2014 | Tibbitts et al. |
| 9,098,859 | B2 | 8/2015 | Moinuddin et al. |
| 9,386,447 | B2 | 7/2016 | Tibbitts et al. |
| 9,451,447 | B2 | 9/2016 | Tibbitts et al. |
| 9,615,213 | B2 | 4/2017 | Tibbitts et al. |
| 9,854,426 | B1 | 12/2017 | Wang et al. |
| RE47,216 | E | 1/2019 | Brown et al. |
| 10,172,070 | B2 | 1/2019 | Tibbitts et al. |
| 10,440,451 | B2 | 10/2019 | Balakrishnan et al. |
| 10,506,091 | B2 | 12/2019 | Tibbitts et al. |
| 11,021,164 | B2 | 6/2021 | Tibbitts et al. |
| 11,082,758 | B2 | 8/2021 | Balakrishnan et al. |
| 2001/0050614 | A1 | 12/2001 | Yang |
| 2002/0032510 | A1 | 3/2002 | Turnbull et al. |
| 2002/0039896 | A1 | 4/2002 | Brown |
| 2002/0041240 | A1* | 4/2002 | Ikeda .................... G08G 1/205 340/425.5 |
| 2002/0049069 | A1 | 4/2002 | Johnson |
| 2002/0065112 | A1 | 5/2002 | Endoh et al. |
| 2002/0128000 | A1 | 9/2002 | Do |
| 2002/0168981 | A1 | 11/2002 | Meda |
| 2002/0198004 | A1 | 12/2002 | Heie et al. |
| 2002/0198005 | A1 | 12/2002 | Hilton et al. |
| 2003/0129995 | A1 | 7/2003 | Niwa et al. |
| 2003/0137408 | A1 | 7/2003 | Breiner |
| 2003/0143988 | A1 | 7/2003 | Jamadagni |
| 2004/0092253 | A1 | 5/2004 | Simonds et al. |
| 2004/0093155 | A1 | 5/2004 | Simonds et al. |
| 2004/0100368 | A1 | 5/2004 | Lobaza et al. |
| 2004/0132467 | A1 | 7/2004 | Hull et al. |
| 2004/0153362 | A1 | 8/2004 | Bauer et al. |
| 2004/0156333 | A1 | 8/2004 | Bush |
| 2004/0198332 | A1 | 10/2004 | Lundsgaard |
| 2004/0203766 | A1 | 10/2004 | Jenniges et al. |
| 2004/0203900 | A1 | 10/2004 | Cedervall et al. |
| 2004/0236475 | A1 | 11/2004 | Chowdhary |
| 2004/0243292 | A1 | 12/2004 | Roy |
| 2004/0248589 | A1 | 12/2004 | Gwon et al. |
| 2004/0251745 | A1 | 12/2004 | Baruque et al. |
| 2004/0253963 | A1 | 12/2004 | Park et al. |
| 2005/0037760 | A1 | 2/2005 | Maruyama |
| 2005/0070298 | A1 | 3/2005 | Caspi et al. |
| 2005/0096026 | A1 | 5/2005 | Chitrapu et al. |
| 2005/0119002 | A1 | 6/2005 | Bauchot et al. |
| 2005/0153680 | A1 | 7/2005 | Yoshioka et al. |
| 2005/0170850 | A1 | 8/2005 | Edwards et al. |
| 2005/0171650 | A1* | 8/2005 | Basir ..................... G07C 5/085 701/1 |
| 2005/0179519 | A1 | 8/2005 | Kawamura |
| 2005/0184860 | A1 | 8/2005 | Taruki et al. |
| 2005/0255874 | A1 | 11/2005 | Stewart-Baxter et al. |
| 2005/0261011 | A1 | 11/2005 | Scott |
| 2005/0264404 | A1 | 12/2005 | Franczyk et al. |
| 2006/0040640 | A1 | 2/2006 | Thompson et al. |
| 2006/0046765 | A1 | 3/2006 | Kogure |
| 2006/0052919 | A1 | 3/2006 | Hong et al. |
| 2006/0061988 | A1 | 3/2006 | Johnson et al. |
| 2006/0099940 | A1 | 5/2006 | Pfleging et al. |
| 2006/0099959 | A1 | 5/2006 | Staton et al. |
| 2006/0099969 | A1 | 5/2006 | Staton et al. |
| 2006/0104297 | A1 | 5/2006 | Buyukkoc et al. |
| 2006/0116807 | A1 | 6/2006 | Hijikata |
| 2006/0136131 | A1 | 6/2006 | Dugan et al. |
| 2006/0136291 | A1 | 6/2006 | Morita et al. |
| 2006/0148490 | A1 | 7/2006 | Bates et al. |
| 2006/0211412 | A1 | 9/2006 | Vance |
| 2006/0217130 | A1 | 9/2006 | Rowitch et al. |
| 2006/0229058 | A1 | 10/2006 | Rosenberg |
| 2006/0246918 | A1 | 11/2006 | Fok et al. |
| 2006/0293842 | A1 | 12/2006 | Casino |
| 2007/0016643 | A1 | 1/2007 | Boss et al. |
| 2007/0072616 | A1 | 3/2007 | Irani |
| 2007/0082678 | A1 | 4/2007 | Himmelstein |
| 2007/0088823 | A1 | 4/2007 | Fowler et al. |
| 2007/0174612 | A1* | 7/2007 | Urban ................ G07C 9/00309 713/168 |
| 2007/0257815 | A1 | 11/2007 | Gunderson et al. |
| 2007/0271234 | A1 | 11/2007 | Ravikiran |
| 2007/0287420 | A1 | 12/2007 | Kirke |
| 2007/0287474 | A1 | 12/2007 | Jenkins et al. |
| 2008/0061988 | A1 | 3/2008 | Mock et al. |
| 2008/0064446 | A1 | 3/2008 | Camp et al. |
| 2008/0075056 | A1 | 3/2008 | Thome |
| 2008/0139183 | A1 | 6/2008 | Keohane et al. |
| 2008/0183388 | A1 | 7/2008 | Goodrich |
| 2008/0214211 | A1 | 9/2008 | Lipovski |
| 2008/0215209 | A1 | 9/2008 | Ikeda et al. |
| 2008/0252487 | A1 | 10/2008 | McClellan et al. |
| 2008/0255888 | A1 | 10/2008 | Berkobin et al. |
| 2008/0268769 | A1 | 10/2008 | Brown et al. |
| 2008/0275604 | A1 | 11/2008 | Perry et al. |
| 2008/0294302 | A1 | 11/2008 | Basir |
| 2008/0294690 | A1 | 11/2008 | McClellan et al. |
| 2009/0002147 | A1 | 1/2009 | Bloebaum et al. |
| 2009/0004968 | A1 | 1/2009 | Miyake |
| 2009/0029675 | A1 | 1/2009 | Steinmetz et al. |
| 2009/0082951 | A1 | 3/2009 | Graessley |
| 2009/0085728 | A1 | 4/2009 | Catten et al. |
| 2009/0085744 | A1 | 4/2009 | Sellin et al. |
| 2009/0098855 | A1 | 4/2009 | Fernandez et al. |
| 2009/0111422 | A1 | 4/2009 | Bremer et al. |
| 2009/0157307 | A1 | 6/2009 | Krumm et al. |
| 2009/0163243 | A1 | 6/2009 | Barbera |
| 2009/0177336 | A1 | 7/2009 | McClellan et al. |
| 2009/0224931 | A1 | 9/2009 | Dietz et al. |
| 2009/0309787 | A1 | 12/2009 | Gildea |
| 2010/0033133 | A1 | 2/2010 | Vetter |
| 2010/0033312 | A1 | 2/2010 | Chauncey et al. |
| 2010/0033333 | A1 | 2/2010 | Victor et al. |
| 2010/0069018 | A1 | 3/2010 | Simmons et al. |
| 2010/0087984 | A1 | 4/2010 | Joseph |
| 2010/0131304 | A1 | 5/2010 | Collopy et al. |
| 2010/0204877 | A1 | 8/2010 | Schwartz |
| 2010/0207787 | A1 | 8/2010 | Catten et al. |
| 2010/0210254 | A1 | 8/2010 | Kelly et al. |
| 2010/0216509 | A1 | 8/2010 | Riemer et al. |
| 2010/0233959 | A1 | 9/2010 | Kelly et al. |
| 2010/0238009 | A1 | 9/2010 | Cook et al. |
| 2010/0250021 | A1 | 9/2010 | Cook et al. |
| 2010/0279647 | A1 | 11/2010 | Jacobs et al. |
| 2010/0323657 | A1 | 12/2010 | Barnard et al. |
| 2011/0009107 | A1 | 1/2011 | Guba et al. |
| 2011/0021234 | A1 | 1/2011 | Tibbitts et al. |
| 2011/0065456 | A1 | 3/2011 | Brennan et al. |
| 2011/0077028 | A1 | 3/2011 | Wilkes, III et al. |

## US 11,638,198 B2

Page 4

(56)    **References Cited**

### U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 2011/0092159 A1 | 4/2011 | Park et al. |
| 2011/0117903 A1 | 5/2011 | Bradley |
| 2011/0151842 A1 | 6/2011 | Olincy et al. |
| 2011/0151852 A1 | 6/2011 | Olincy et al. |
| 2011/0166936 A1 | 7/2011 | Dixon et al. |
| 2011/0195699 A1 | 8/2011 | Tadayon et al. |
| 2011/0213628 A1 | 9/2011 | Peak et al. |
| 2011/0231628 A1 | 9/2011 | Gelter et al. |
| 2011/0263240 A1 | 10/2011 | Featherstone et al. |
| 2011/0294520 A1 | 12/2011 | Zhou et al. |
| 2012/0015690 A1 | 1/2012 | Miao |
| 2012/0058750 A1 | 3/2012 | Olincy et al. |
| 2012/0058755 A1 | 3/2012 | Olincy et al. |
| 2012/0058756 A1 | 3/2012 | Olincy et al. |
| 2012/0071151 A1 | 3/2012 | Abramson et al. |
| 2012/0072243 A1 | 3/2012 | Collins et al. |
| 2012/0074770 A1 | 3/2012 | Lee |
| 2012/0089423 A1 | 4/2012 | Tamir et al. |
| 2012/0101855 A1 | 4/2012 | Collins et al. |
| 2012/0108219 A1 | 5/2012 | Kiddie et al. |
| 2012/0109692 A1 | 5/2012 | Collins et al. |
| 2012/0123806 A1 | 5/2012 | Schumann, Jr. et al. |
| 2012/0129545 A1 | 5/2012 | Hodis et al. |
| 2012/0214463 A1 | 8/2012 | Smith et al. |
| 2012/0215594 A1 | 8/2012 | Gravelle |
| 2012/0226413 A1 | 9/2012 | Chen et al. |
| 2012/0231779 A1 | 9/2012 | Rathus et al. |
| 2012/0244883 A1 | 9/2012 | Tibbitts et al. |
| 2012/0264409 A1 | 10/2012 | Geyer et al. |
| 2012/0268235 A1 | 10/2012 | Farhan et al. |
| 2012/0323690 A1 | 12/2012 | Michael |
| 2013/0017816 A1 | 1/2013 | Talty et al. |
| 2013/0019262 A1 | 1/2013 | Bhatia et al. |
| 2013/0023229 A1 | 1/2013 | Messerly |
| 2013/0035117 A1 | 2/2013 | Litkouhi et al. |
| 2013/0084847 A1 | 4/2013 | Tibbitts et al. |
| 2013/0150004 A1 | 6/2013 | Rosen |
| 2013/0217331 A1 | 8/2013 | Manente |
| 2013/0225092 A1 | 8/2013 | Chalmers et al. |
| 2013/0238365 A1 | 9/2013 | Nepomuceno |
| 2013/0302758 A1 | 11/2013 | Wright |
| 2013/0316311 A1 | 11/2013 | England |
| 2013/0332007 A1 | 12/2013 | Louboutin |
| 2013/0344856 A1 | 12/2013 | Silver et al. |
| 2014/0095305 A1 | 4/2014 | Armitage et al. |
| 2014/0113619 A1 | 4/2014 | Tibbitts et al. |
| 2014/0142805 A1 | 5/2014 | Frye |
| 2014/0142989 A1 | 5/2014 | Grosso |
| 2014/0236695 A1 | 8/2014 | Shvarts et al. |
| 2014/0266789 A1 | 9/2014 | Matus |
| 2014/0272847 A1 | 9/2014 | Grimes et al. |
| 2014/0302834 A1 | 10/2014 | Jones |
| 2014/0306799 A1 | 10/2014 | Ricci |
| 2014/0322676 A1 | 10/2014 | Raman |
| 2014/0364108 A1 | 12/2014 | Tibbitts et al. |
| 2014/0372017 A1 | 12/2014 | Armitage |
| 2015/0017972 A1 | 1/2015 | Osann, Jr. |
| 2015/0054639 A1 | 2/2015 | Rosen |
| 2015/0081404 A1 | 3/2015 | Basir |
| 2015/0081605 A1 | 3/2015 | Im et al. |
| 2015/0106289 A1 | 4/2015 | Basir et al. |
| 2015/0120336 A1 | 4/2015 | Grokop et al. |
| 2016/0021238 A1 | 1/2016 | Abramson et al. |
| 2016/0086285 A1 | 3/2016 | Jordan et al. |
| 2016/0171521 A1 | 6/2016 | Ramirez et al. |
| 2016/0309018 A1 | 10/2016 | Tibbitts et al. |
| 2016/0353355 A1 | 12/2016 | Tibbitts et al. |
| 2017/0104865 A1 | 4/2017 | Skelton |
| 2017/0127255 A1 | 5/2017 | Archer et al. |
| 2017/0203767 A1 | 7/2017 | Tibbitts et al. |
| 2017/0310445 A1 | 10/2017 | Kalligudd |
| 2018/0013873 A1 | 1/2018 | Farrell et al. |
| 2018/0124233 A1 | 5/2018 | Abramson et al. |
| 2019/0045048 A1 | 2/2019 | Li et al. |

### FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| EP | 1931109 | B1 | 11/2011 |
| GB | 2344971 | A | 6/2000 |
| GB | 2362020 | A | 11/2001 |
| JP | H07245782 | A | 9/1995 |
| JP | H10200961 | A | 7/1998 |
| JP | H10256979 | A | 9/1998 |
| JP | H10294970 | A | 11/1998 |
| JP | H114190 | A | 1/1999 |
| JP | H1188954 | A | 3/1999 |
| JP | 2000349895 | A | 12/2000 |
| JP | 2006304034 | A | 11/2006 |
| KR | 20010097024 | A | 11/2001 |
| WO | 9834412 | A2 | 8/1998 |
| WO | 9955102 | A1 | 10/1999 |
| WO | 2006070253 | A2 | 7/2006 |
| WO | 2008109477 | A1 | 9/2008 |

### OTHER PUBLICATIONS

Agreement to Arbitrate Claims filed in District Court, Boulder County, Colorado, Case No. 2016CV30261 on Aug. 3, 2016, 4 pages.

Answer and Affirmative Defenses to Respondent's Counterclaims dated Aug. 25, 2016, 4 PWs.

Answer and Counterclaim dated Aug. 5, 2016, 6 pages.

Answer of Katasi LLC's filed in U.S. District Court for the District of Colorado, Case No. 1:12-CV-03306-PAB-KLM, on May 8, 2013, 3 pages.

Cambridge Mobile Telematics, "DriveWell Tag," Product Brochure, pp. 1-4.

Cambridge Mobile Telematics, "Introduction to CMT," cmtelematics.com, pp. 1-21.

Civil Case Cover Sheet for Initial Pleading of Complaint, Counter-claim, Cross-Claim or Third Patty Complaint filed in District Court, Boulder County, Colorado, Case No. 2016CV30261 on Mar. 8, 2016, 2 pages.

Civil Cover Sheet filed in United States District Court for the District of Colorado, Case No. 1: 16-cv-439 on Feb. 24, 2016, 2 pages.

Civil Cover Sheet filed in U.S. District Court for the District of Colorado, Case No. 1:12-CV-03306-PAB-KLM, on Dec. 19, 2012, 1 page.

Complaint, filed in District Court, Boulder County, Colorado, Case No. 2016CV30261 on Mar. 8, 2016, 21 pages.

Complaint filed in United States District Court for the District of Colorado, Case No. 1:16-CV-439 on Feb. 24, 2016, 21 pages.

Complaint for Declaratory Judgment and Jury Demand filed in U.S. District Court for the District of Colorado, Case No. 1:12-CV-03306-PAB-KLM, on Dec. 19, 2012,20 pages.

Court's Inquiry Regarding Agreement to Arbitrate issued in District Court, Boulder County, Colorado, Case No. 2016CV30261 on. Aug. 2, 2016, 1 page.

Defendant Katasi, LLC's Corporate Disclosure Statement filed in U.S. District Court for the District of Colorado, Case No. 1:12-CV-03306-PAB-KLM, on Apr. 18, 2013, 2 pages.

Defendant Obdedge, LLC Cellcontrol's Unopposed Motion for Extension of Time to Respond to Complaint with Proposed Order filed in U.S. District Court for the District of Colorado, Case No. 1: 12-CV-03306-PAB-KLM, on May 9, 2013, 3 pages.

Defendant Obdedge, LLC, d/b/a Cellcontrol's Unopposed Motion for Extension of Time to Respond to Complaint with Proposed Order filed in U.S. District Court for the District of Colorado, Case No. 1:12-CV-03306-PAB-KLM, on May 23, 2013, 3 pages.

Defendant Obdedge, LLC's Notice of Related Cases filed in U.S. District Court for the District of Colorado, Case No. 1:12-CV-03306-PAB-KLM, on Apr. 18, 2013, 2 pages.

Fetter J.G., et al., Digital Cellular Telephone Interaction with Implantable Cardioverter—Defibrillators, JACC, Mar. 1998, vol. 31 (3), pp. 623-628.

**US 11,638,198 B2**

Page 5

(56)    **References Cited**

OTHER PUBLICATIONS

Hahn R. W., et al., "The Economics of Regulating Cellular Phones in Vehicles," Working paper from AEI-Brookings Joint. Center for Regulatory Studies, Oct. 1999, pp. 1-44.

International Preliminary Report on Patenability for Application No. PCT/US11/57357 dated Mar. 6, 2014, 16 pages.

International Preliminary' Report on Patentability for International (PCT) Patent Application No. PCT/US2010/042793, dated Feb. 2, 2012.

International Search Report and Written Opinion issued in International Application No. PCT/US2020/021017, dated Jun. 9, 2020, 9 pages.

International Search Report for International (PCT) Patent Application No. PCTUS2010/042793, dated Sep. 10, 2010.

Joint Motion to Vacate and Re-set Date for Scheduling Conference and Date for Filing of Proposed Scheduling Order with Proposed Order filed in U.S. District Court for the District of Colorado, Case No. 1:12-CV-03306-PAB-KLM, on May 24, 2013, 5 pages.

Joint Stipulation of Dismissal filed in U.S. District Court for the District of Colorado, Case No. 1:12-CV-03306-PAB-KLM, on May 31, 2013, 17 pages.

Joint Stipulation to Extend Time to Respond to Complaint Pursuant to D.C. Colo.LCivR 6.1(A) filed in U.S. District Court for the District of Colorado, Case No. 1:12-CV-03306-PAB-KLM, on Mar. 26, 2013, 2 pages.

Madden S., "Telematics in Auto Insurance," Cambridge Mobile Telematics, 2019, pp. 1-35.

Mayhew D.M., "Multi-Rate Sensor Fusion for GPS Navigation Using Kalman Filtering," Thesis, May 1999, pp. 1-125.

Microstrain, "DVRT Microminiature Displacement Sensors" Little Sensors, Big Ideas, Version 10.04b, 2000, 1 page.

Minute Order Granting Joint Motion to Vacate and Re-set Date for Scheduling Conference and Date for Filing of Proposed Scheduling Order issued by the U.S. District Court for the District of Colorado, Case No. 1:12-CV-03306-PAB-KLM, on May 28, 2013, 1 page.

Minute Order Granting Unopposed Motion for Extension of Time to Respond to Complaint issued by the U.S. District Court for the District of Colorado, Case No. 1: 12-CV-03306-PAB-KLM, on Apr. 22, 2013, 1 page.

Minute Order Granting Unopposed Motion for Extension of Time to Respond to Complaint issued by the U.S. District Court for the District of Colorado, Case No. 1:12-CV-03306-PAB-KLM, on May 10, 2013, 1 page.

Minute Order issued by the U.S. District Court for the District of Colorado, Case No. 1:12-CV-03306-PAB-KLM, on Apr. 22, 2013, 1 page.

Minute Order re: Preliminary Scheduling Conference issued by the U.S. District Court for the District of Colorado, Case No. 1:12-CV-03306-PAB-KLM, on Jan. 2, 2013, 9 pages.

Minute Order Resetting Scheduling Conference issued by the U.S. District Court for the District of Colorado, Case No. 1:12-CV-03306-PAB-KLM, on Mar. 12, 2013, 1 page.

Motion to Compel Arbitration and Stay Proceedings with Proposed Order filed in District Court, Boulder County, Colorado, Case No. 2016CV30261 on May 3, 2016, 6 pages.

Motion to Dismiss without Prejudice filed in United States District Court for the District of Colorado, Case No. 1.16-cv-439 on Mar. 7, 2016, 1 page.

Notice of Allowance for U.S. Appl. No. 14/139,698, dated Nov. 22, 2016.

Notice of Allowance for U.S. Appl. No. 12/841,077, dated Feb. 11, 2014.

Notice of Allowance for U.S. Appl. No. 12/841,077, dated Oct. 31, 2012.

Notice of Allowance for U.S. Appl. No. 13/386,643, dated Dec. 17, 2013.

Notice of Allowance for U.S. Appl. No. 13/612,748, dated Mar. 1, 2016.

Notice of Allowance for U.S. Appl. No. 14/139,698, dated May 16, 2016.

Notice of Allowance for U.S. Appl. No. 14/336,282, dated May 11, 2016.

Notice of Allowance for U.S. Appl. No. 14/452,500, dated Sep. 25, 2018.

Notice of Arbitration and Statement of Claim dated Jul. 15, 2016, 19 pages.

Notice of Entry of Appearance of Jeff Massey Au filed in United States District Court for the District of Colorado, Case No. 1:16-cv-439 on Feb. 24, 2016, 2 pages.

Notice of Entry of Appearance of Yiu Au filed in United States District Court for the District of Colorado, Case No. 1:16-cv-439 on Feb. 24, 2016, 2 pages.

Official Action for U.S. Appl. No. 12/841,077, dated May 3, 2012.

Official Action for U.S. Appl. No. 13/386,643, dated Apr. 12, 2013.

Official Action for U.S. Appl. No. 13/612,748, dated Dec. 23, 2013.

Official Action for U.S. Appl. No. 13/612,748, dated Dec. 26, 2014.

Official Action for U.S. Appl. No. 13/612,748, dated Jul. 24, 2015.

Official Action for U.S. Appl. No. 14/139,698, dated Dec. 4, 2015.

Official Action for U.S. Appl. No. 14/139,698, dated Jul. 28, 2015.

Official Action for U.S. Appl. No. 14/336,282, dated Sep. 28, 2015.

Official Action for U.S. Appl. No. 14/452,500, dated Feb. 11, 2016.

Official Action for U.S. Appl. No. 14/452,500, dated Jul. 11, 2016.

Official Action for U.S. Appl. No. 14/452,500, dated Jul. 17, 2017.

Official Action for U.S. Appl. No. 14/452,500, dated Mar. 27, 2018.

Official Action for U.S. Appl. No. 15/191,286, dated Feb. 21, 2019.

Official Action for U.S. Appl. No. 15/191,286, dated Jan. 20, 2017.

Official Action for U.S. Appl. No. 15/191,286, dated Jun. 15, 2018.

Official Action for U.S. Appl. No. 15/191,286, dated Oct. 11, 2017.

Official Action for U.S. Appl. No. 15/233,784, dated Apr. 20, 2017.

Official Action for U.S. Appl. No. 15/233,784, dated Dec. 18, 2017.

Official Action for U.S. Appl. No. 15/477,536, dated Aug. 27, 2018.

Official Action for U.S. Appl. No. 15/477,536, dated Dec. 8. 2017.

Order Granting Plaintiffs Unopposed Motion for Extension of Time to Respond to Defendants Motion to Compel Arbitration issued, in District Court; Boulder County, Colorado, Case No. 2016CV30261 on Jun. 18, 2016, 2 pages.

Order Granting Unopposed Motion for Extension of Time to Respond issued in District Court, Boulder County, Colorado, Case No. 2016CV30261 on May 4, 2016, 1 page.

Order Granting Unopposed Motion for Extension of Time to Respond to Defendant's Motion to Compel Arbitration issued in District Court, Boulder County, Colorado, Case No. 2016CV30261 on May 23, 2016,4 pages.

Order re: Court's Review of Advisement of Agreement to Arbitrate Claims and Stay Proceedings issued in District Court, Boulder County, Colorado, Case No. 2016CV30261 on Jun. 23, 2016, 3 pages.

Order to Show Cause Issued by United States District Court for the District of Colorado, Case No. 1: 16-cv-439 on Feb. 26, 2016, 3 pages.

Plaintiff Aegis Mobility, Inc.s Corporate Disclosure Statement filed in U.S. District Court for the District of Colorado, Case No. 1:12-CV-03306-PAB-KLM on Dec. 19, 2012, 1 page.

Plaintiffs Second Unopposed Motion for Extension of Time to Respond to Defendant's Motion to Compel Arbitration with Proposed Order filed in District Court, Boulder County, Colorado, Case No. 2016CV30261 on Jun. 15, 2016, 4 pages.

Report on the Filing or Determination of an Action Regarding a Patent or Trademark filed in U.S. District Court for the District of Colorado, Case No. 1:12-CV-03306-PAB-KLM, on Dec. 20, 2012, 3 pages.

Report on the Filing or Determination, of an Action Regarding a Patent or Trademark filed in U.S. District Court for the District of Colorado, Case No. 1:12-CV-03306-PAB-KLM. on Dec. 19. 2012, 1 page.

Return of Service of Summons, Civil Case, Cover Sheet, Complaint, and Exhibit A on Joe Breaux of Defendant Obdedge, LLC on Apr. 4, 2016, filed in District Court, Boulder County, Colorado, Case No. 2016CV30261 on Apr. 14, 2016, 1 page.

Summons in a Civil Action issued to Katasi, LLC in U.S. District Court for the District of Colorado, Case No. 1:12-CV-03306-PAB-KLM, on Dec. 19, 2012, 1 page.

## US 11,638,198 B2

Page 6

(56)    **References Cited**

OTHER PUBLICATIONS

Summons in a Civil Action issued to obdEDGE, LLC in U.S. District Court for the District of Colorado, Case No. 1:12-CV-03306-PAB-KLM, on Dec. 19, 2012, 1 page.

Summons to Obdedge, LLC d/b/a Cellcontrol filed in United States District Court for the District of Colorado, Case No. 1:16-cv-439 on Feb. 24, 2016, 2 pages.

Summons to Obdedge, LLC d/b/a Cellcontrol issued by District Court, Boulder County, Colorado, Case No. 2016CV30261 on Mar. 8, 2016, 2 pages.

Supplemental Notice of Allowability for U.S. Appl. No. 12/841,077, dated Dec. 2. 2012.

Tibbitts., et al., U.S. Appl. No. 13/386,643, filed Jan. 23, 2012.

U.S. Appl. No. 61/104,171, filed Oct. 9, 2008, Curry et al.

Unopposed Motion for Extension of Time to Respond to Complaint filed in U.S. District Court for the District of Colorado, Case No. 1:12-CV-03306-PAB-KLM, on Apr. 18, 2013, 5 pages.

Unopposed Motion for Extension of Time to Respond to Complaint with Proposed Order filed in U.S. District Court for the District of Colorado, Case No. 1:12-CV-03306-PAB-KLM, on Apr. 18, 2013, 5 pages.

Unopposed Motion for Extension of Time to Respond to Defendant's Motion to Compel Arbitration with Proposed Order filed in District Court, Boulder County, Colorado, Case No. 2016CV30261 on May 20, 2016,4 pages.

Unopposed Motion for Extension of Time to Respond with Proposed Order filed in District Court, Boulder County, Colorado, Case No. 2016CV30261 on May 3, 2016, 4 pages.

U.S. Appl. No. 14/139,698, filed Dec. 23, 2013.

U.S. Appl. No. 15/233,784, filed Aug. 10, 2016.

U.S. Appl. No. 61/104,171, inventor Curry, filed Oct. 9, 2008.

Written Opinion for International (PCT) Patent Application No. PCT/US2010/042793, dated Sep. 10, 2010.

Extended European Search Report issued in European Application No. 20765664.6, dated Sep. 30, 2022, 11 pages.

* cited by examiner

# Figure 1

Mobile Services Control System



# Figure 2



# Figure 3

VDS – Vehicle Detection System



# Figure 4



# Figure 5



SDRS – Safe Driving Registration System

# Figure 6



Service Decision System

# Figure 7



## Figure 8



## Figure 9



# Fig. 10



US 11,638,198 B2

**1**

# METHOD AND SYSTEM FOR CONTROLLING A MOBILE COMMUNICATION DEVICE IN A MOVING VEHICLE

## CROSS REFERENCE TO RELATED APPLICATIONS

This application is a continuation of U.S. patent application Ser. No. 16/236,436 filed Dec. 29, 2018, which is a continuation of U.S. patent application Ser. No. 15/233,784 filed Aug. 10, 2016, now U.S. Pat. No. 10,172,070, which is a continuation of U.S. patent application Ser. No. 14/336,282 filed Jul. 21, 2014, now U.S. Pat. No. 9,451,447, which is a continuation of U.S. patent application Ser. No. 13/386,643 filed Jun. 7, 2012, now U.S. Pat. No. 8,787,936, which is a national stage application under 35 U.S.C. 371 of PCT Application No. PCT/US2010/042793 having an international filing date of 21 Jul. 2010, which designated the United States, which PCT application claims the benefit under 35 U.S.C. § 119(e) of U.S. Provisional Application No. 61/227,404 filed 21 Jul. 2009 and U.S. Provisional Application No. 61/267,064 filed Dec. 6, 2009, the entire disclosure of each of the foregoing applications is incorporated herein by reference.

## RELATED FIELD OF THE INVENTION

The present invention is related to restricting the use of a mobile communication device by an operator of a vehicle, and in particular, to restricting operator use of mobile services such as texting, watching videos, and playing games while, e.g., driving an automobile.

## BACKGROUND

Mobile cellular phones have become the preferred communication device for most people around the world. They offer convenience, ease of use, communication flexibility, and extensive coverage almost anywhere a person places or receives a call. Manufacturers of mobile phones (also referred to as mobiles or cell phones) have diversified their products to add color, style, and the ability to accessorize such phones as a fashion statement. The power of communicating from anywhere, along with these personalizations, has made cell phones as indispensible as the automobile for most Americans.

In fact, the dependence on cell phones has changed the way most people communicate. Almost 20% of U.S. households have dropped their wired landline service and rely exclusively on their cell phone. People engage in cell phone conversations from restaurants, at the mall, at the airport, and while traveling between locations. It is this later situation of use while traveling that has received a great deal of attention over the past few years—more particularly, driving while talking on a cell phone. Sadly, many people are killed every year as a result of someone driving while talking on a cell phone (or trying to dial a number on a cell phone), becoming distracted, and causing an accident.

Some studies have found that just listening on a cell phone while driving is significantly distracting to the human brain, and can cause the driver to make driving errors similar to those that can occur while under the influence of alcohol. In fact, in one study at Carnegie-Mellon University, the part of the brain associated with driving had a 37% decrease in brain function while a person was listening to a conversation and trying to understand the topics discussed and formulate

**2**

response questions. This serious drop in cognitive awareness occurred regardless of whether the test subjects were using hand-held or hands-free mobile devices.

To reduce automobile accidents, over 50 countries around the world have enacted laws which limit or ban cell phone use while driving. In the United States, 21 states have banned cell phone voice use by novice (typically teen) drivers and 5 have banned use for all drivers unless a hands-free device is used. Laws are also on the books in 17 states to ban all cell phone use by school bus drivers.

As risky and dangerous as cell phone voice use is, the exploding popularity of text messaging (also known as texting) in the past few years, has made texting while driving (TWD) an even greater risk. A recent poll found that over 46% of teenage drivers admitted to texting while driving, with the actual rate probably higher than that. Because texting obviously involves the visual attention of the user's eyes to read a message and type in a message, the degree of distraction is far greater. Local and national news outlets have sadly reported a steady stream of fatal accidents where the cause was texting while driving. As a result, many state legislatures have banned or are discussing bans of TWD. Fourteen states in the U.S. will have TWD bans for all drivers at all times in effect by the end of 2009, with 10 states banning texting for novice (typically teen) drivers. Most states make these primary offenses.

While legislation is a good and necessary step to influence safe driving behavior and reduce accidents, it is not sufficient to prevent, or really restrict, the incidents of distracted and dangerous driving while using a mobile device. Too many people continue to drive dangerously despite existing laws and the known dangers. What is needed is a technical solution to reliably restrict mobile device services in situations that could cause danger to the user or other people. Further, the solution needs to make it difficult to circumvent or break the solution itself. With the type of mobile devices expanding (cell phones, smart phones, Personal Digital Assistants {PDAs}, wireless computers, mobile digital TVs, etc.), and new wireless technologies emerging (cellular, WLAN, WiMAX, Whitespace, mobile DTV, etc.), and the types of mobile services diversifying (voice, text, video, Internet, games, etc.) the need for a technical solution is even greater.

In an attempt to solve the risks of TWD, a variety of technologies have emerged, or been proposed. One such technology, provided by a company Textecution, www.textecution.com, provides an application for Android phones wherein the technology disables the entire texting function when it determines the mobile phone is moving at more than 10 miles per hour (mph), which is based on the GPS (Global Positioning System) capability built-in to the phone. Another technology, identified by the name Key2SafeDriving, http://safedrivingsystems.com, uses a specially design key with a casing (also known as a fob) that surrounds the key. When the key is flipped or slid open the fob sends a Bluetooth wireless signal to the phone to disable the entire mobile phone. Similarly, a solution by ObdEdge, http://www.cellcontrol.com, uses a module attached to a vehicle to send a Bluetooth signal directly to a mobile phone indicating that the car is moving, and in turn, software on the phone disables the phone.

A primary disadvantage of the above-identified technologies is that each relies on software within the mobile phone to disable the entire phone or a specific service on the phone. The software in these technologies has to be implemented for each specific mobile phone model, and therefore isn't easily available on all phones. In addition, recent malware

US 11,638,198 B2

3                                                        4

attacks on mobile devices by hackers and organized criminals have proven that software on mobile devices can be easily compromised. Such technologies that rely on software, within the phone itself, to disable the phone, are vulnerable to misuse. Further, some of these technologies rely on wireless Bluetooth signals from a module in the vehicle to the mobile phone, which creates another point of vulnerability. For example, a user could block the Bluetooth signal from reaching the phone, and in turn, the phone would never receive the instruction to turn itself off.

Another disadvantage of these technologies is that they tend to take an overly broad approach to solving the problems of talking while driving, and/or texting while driving. These technologies are designed to detect motion of the mobile (typically a speed above 5-10 miles per hour), and then typically disable the entire mobile phone. They do not distinguish whether the user of the mobile is in the driver's seat of a vehicle, or in the passenger seat, or the back seat, or a seat on a bus or train. As a result they typically incorporate an over-ride to allow the user to bypass the blocking feature when they are a passenger. It is obvious that this creates a significant limitation to blocking in that the user can disable the block when they desire to text and drive. That is, such technologies do not have a position detection mechanism, to operate in conjunction with a controller for activating/deactivating service (e.g., texting) provided by a mobile, for determining where a mobile is located within a moving vehicle and then determining whether a service provided by the mobile should be disabled or enabled.

Consequently, a need exists for a method and system which detects operation of a vehicle, and controls specific services on one or more mobile phones (more generally, "mobile communication devices" or "wireless communication devices"), wherein the use of such services, while driving, can sufficiently distract a driver due to, e.g., the driver viewing and/or composing one or more non-driving related communications via the mobile communication device so that there is a significant decrease in driving safety. In particular, a need exists for a reliable network-based solution that monitors vehicle and mobile device status, and provides information regarding such statuses, along with subscriber service settings, to a network-based service provider to thereby control the services provided by the mobile communication device. Such a network-based method and system can provide advantages over other arrangements which exclusively rely on software in the mobile communication device (which could be compromised) and/or on a wireless Bluetooth connection directly to the device.

Furthermore, a need exists for a method and system which: (i) detects the physical position of one or more mobile communication devices within the vehicle, (ii) determines whether one or more of those devices are within a restricted zone (e.g., the driver's seat) of the vehicle, (iii) relays information regarding such a device within such a restricted zone to a network-based database and server where alerts or reports can be generated to the subscriber, and/or the restricted zone information may be relayed to the service provider of the mobile device and in turn the service provider may enable or disable one or more services on the mobile device.

List of Terms

The following acronyms are used in the following discussion and are provided here for reference:
  CMD Controllable Mobile Device
  VDS Vehicle Detection System

SDRS Safe Driving Registration System
MDSP Mobile Device Service Provider
VSP Vehicle Service Provider

SUMMARY OF THE DISCLOSURE

Disclosed herein is a method and system for detecting, monitoring and/or controlling one or more of mobile services for a mobile communication device (also referred to herein as a Controllable Mobile Device or CMD), and in particular, when the device is being used and the vehicle, operated by the user of the device, is moving. The present method and system (also referred to as a "mobile services control system" herein) determines whether the vehicle is being operated by a user that may also have access to a mobile communication device which, if used concurrently while the vehicle is in operation, may lead to unsafe operation of the vehicle. If the mobile services control system determines that a vehicle operator has potentially unsafe access to a mobile communication device, the mobile services control system may restrict operator access to one or more services that would otherwise be available to the operator via the mobile communication device.

In at least some embodiments of the mobile services control system, the position of a mobile communication device within the vehicle is determined, and in particular, whether the mobile communication device (also referred to as merely a "mobile device" herein) is within a restricted zone of the vehicle, which may include, but is not limited to, the driver's seat, areas near the driver's seat, other locations within the vehicle, or in some cases, the entire vehicle occupant enclosure. The present mobile services control system may be utilized to restrict mobile communication device access over any of a plurality of wireless communication standards, protocols or wireless interfaces (including CDMA, WCDMA, TDMA, UMTS, GSM, GPRS, OFDMA, WiMAX, FLO TV, Mobile DTV, WLAN, and Bluetooth technologies), and may be provided across multiple wireless network service providers. The present mobile services control system may be used to restrict access to mobile communication device services (e.g., texting, voice calls, games, videos, Internet access, online books, etc.) on a plurality of mobile communication devices available within a single vehicle occupant enclosure. The ability of embodiments of the mobile services control system to control access to services on one or more mobiles (e.g., within a vehicle occupant enclosure) may be substantially facilitated by centralizing or concentrating information related to subscribers to the mobile services control system, wherein "subscribers" as used herein, unless explicitly indicated otherwise, refers to persons or entities that contract for the user services provided by the mobile services control system (e.g., for restricting user access to certain mobile services). The information that may be centralized or concentrated by the mobile services control system include, e.g., subscriber related data for identifying: mobile(s) and/or mobile user(s) and/or vehicle(s) to which access to certain services on mobiles are to be restricted. In particular, in at least one embodiment, such centralization or concentration of subscriber information may be provided and maintained independently of most wireless service providers. For example, such centralization or concentration of subscriber information may be maintained and accessed via an Internet website, wherein such subscriber information may be accessed from a data management system which, in addition to identifying the subscribers, contains operational information about the mobile communication devices to be controlled by the

US 11,638,198 B2

5

mobile services control system, and the subscriber vehicles and also configurable service control parameters for allowing, e.g., subscribers to configure the mobile services control system to meet their individual needs and/or circumstances. In particular, the mobile services control system provides a mechanism for transmitting data detected during operation of vehicles to the centralized data management system for determining any restrictions on mobile services to be activated or deactivated. The present mobile services control system may also provide support for the correlation of data from the one or more detectors and/or sensors within the vehicle and the mobile communication device, with usage data from the service provider of the mobile communication device. The correlated data may be used for, but is not limited to, reporting on the use of mobile services while the vehicle is moving, sending notification messages and/or alerts, and/or real-time control (enable/disable) of mobile services on the mobile communication device. Accordingly, embodiments of the mobile services control system described herein provide one or more of the following features:

(a) The mobile services control system monitors and/or controls mobile communication device access to services while a corresponding registered vehicle is in operation.

(b) The mobile services control system provides an in-vehicle Vehicle Detection System (VDS) which includes a vehicle motion sensor to determine the operational state of the vehicle, and may include a detection engine (e.g., a hardware/software configuration of computational equipment) with one or more detectors and/or sensors to determine the presence and identity of one or more Controllable Mobile Devices (CMDs) within the vehicle and possibly to determine the position of one or more CMDs within the vehicle.

(c) The mobile services control system may provide a centralized data storage system (herein also referred to as a Safe Driving Database which contains, but is not limited to, (i) subscriber identity information, (ii) registration information identifying the Vehicle Detection System (VDS) for each subscriber's vehicle whose operation triggers activation of the mobile services control system for controlling a Controllable Mobile Device (CMD) within the vehicle, (iii) registration information identifying the one or more CMDs, (iv) customizable service control settings, and (v) "vehicle plus mobile detected information" which includes, but is not limited to, vehicle operational status information (e.g., moving/not moving, possibly GPS position, etc.), the identity of each of one or more CMDs detected within the vehicle, possibly position information for each of the one or more CMDs (e.g., in/out of the restricted zone, position relative to the restricted zone, etc.), possibly the boundary definition of the restricted zone within the vehicle, and other related vehicle or mobile state/position information.

(d) The mobile services control system may provide a centralized data management system (herein also referred to as a Safe Driving Registration System or SDRS) with user interfaces for customers, administrators, and communication (wireless) service providers to configure data monitoring and service control settings, along with generating usage reports and alert messages, and for the SDRS to provide electronic interfaces via which such service providers or other entities may gain access to data contained in the Safe Driving Database.

6

(e) The mobile services control system may provide for the transmission of vehicle operational status and mobile communication device position information to the Safe Driving Database, either in real-time or with a store-forward mechanism.

(f) The mobile services control system may provide, for each vehicle occupant enclosure being monitored, an in-vehicle VDS which can determine the position of each Controllable Mobile Device (CMD) within the vehicle occupant enclosure relative to a predetermined restricted zone, wherein the restricted zone may be any sub-area within the vehicle occupant enclosure, or the entire vehicle occupant enclosure, and then wirelessly transmit that restricted zone position information to the Safe Driving Database.

(g) The mobile services control system may provide and maintain data for each monitored Controllable Mobile Device (CMD), wherein the data may include one or more of: (i) a Mobile Device Air Identifier to identify the CMD to the Vehicle Detection System (VDS), (ii) a wireless signal identifier generated by the CMD's wireless signal, (iii) identification of one or more mobile services or applications that may be controlled by the mobile services control system. The mobile services control system may also provide: (i) a vehicle wireless network interface which may connect the CMD wirelessly to the VDS ii) a service provider wireless network interface which may connect it to a communication (wireless) service provider for communicating with the vehicle, and (iii) control software which may control the services or applications.

(h) The mobile services control system may provide a Service Decision System in operation with the Safe Driving Registration System (SDRS) to receive the vehicle plus mobile detected information and to receive input service control parameters, where the Service Decision System may further be operational to send real-time service control directives to the wireless service provider for the mobile device or to the SDRS to enable or disable specific services for a specific CMD, or to enable to disable the CMD itself, wherein the Service Decision System or SDRS may provide an option for the subscriber of the mobile services control system or the user of the CMD to temporarily override the control of enabling or disabling services.

This Summary section is neither intended to be, nor should be, construed as being representative of the full extent and scope of the present disclosure. Additional benefits, features and embodiments of the present disclosure are set forth in the attached figures and in the description hereinbelow, and as described by the claims. Accordingly, it should be understood that this Summary section may not contain all of the aspects and embodiments claimed herein.

Additionally, the disclosure herein is not meant to be limiting or restrictive in any manner. Moreover, the present disclosure is intended to provide an understanding to those of ordinary skill in the art of one or more representative embodiments supporting the claims. Thus, it is important that the claims be regarded as having a scope including constructions of various features of the present disclosure insofar as they do not depart from the scope of the methods and apparatuses consistent with the present disclosure (including the originally filed claims). Moreover, the present disclosure is intended to encompass and include obvious improvements and modifications of the present disclosure.

US 11,638,198 B2

7

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. **1** discloses a system diagram of an illustrative embodiment for a system for controlling mobile devices in a moving vehicle's restricted zone.

FIG. **2** discloses an illustrative functional block diagram of the Controlled Mobile Device (CMD).

FIG. **3** discloses an illustrative functional block diagram of the Vehicle Detection System (VDS).

FIG. **4** discloses a flowchart for the Vehicle Motion Sensor logic.

FIG. **5** discloses an illustrative functional block diagram of the Safe Driving Registration System (SDRS).

FIG. **6** discloses an illustrative functional block diagram of the Service Decision System.

FIG. **7** discloses a flowchart for the Service Decision Engine logic.

FIG. **8** discloses an illustrative layout of a single position detector in a vehicle.

FIG. **9** discloses an illustrative layout of multiple position detectors in a vehicle.

FIG. **10** discloses a flowchart of a simplified embodiment of the processing performed by the mobile services control system **10**.

### DETAILED DESCRIPTION

For the purposes of promoting an understanding of the principles of the present disclosure, reference will now be made to the exemplary embodiments illustrated in the drawing(s), and specific language will be used to describe the same.

Appearances of the phrases an "embodiment," an "example," or similar language in this specification may, but do not necessarily, refer to the same embodiment, to different embodiments, or to one or more of the figures. The features, functions, and the like described herein are considered to be able to be combined in whole or in part one with another as the claims and/or art may direct, either directly or indirectly, implicitly or explicitly.

Functional units described in this specification may be labeled as modules, in order to more particularly emphasize their structural features. A module may be implemented as a hardware circuit comprising custom VLSI circuits or gate arrays, off-the-shelf semiconductors such as logic chips, transistors, or other discrete components. A module may also be implemented in programmable hardware devices such as field programmable gate arrays, programmable array logic, programmable logic devices or the like. Modules may also be implemented in software for execution by various types of processors. An identified module of programmable or executable code may, for instance, comprise one or more physical or logical blocks of computer instructions which may, for instance, be organized as an object, procedure, or function. Components of a module need not necessarily be physically located together, but may, e.g., comprise disparate instructions stored in different locations which, when joined logically together, comprise the module and achieve the stated purpose for the module.

A module and/or a program of executable code may be a single instruction, or many instructions, and may even be distributed over several different code segments, among different programs, and across several memory devices. Similarly, data or input for the execution of such modules may be identified and illustrated herein as being an encoding of the modules, or being within modules, and may be

8

embodied in any suitable form and organized within any suitable type of data structure.

The various system components and/or modules discussed herein may include one or more of the following: a host server or other computing systems including a processor for processing digital data; a memory coupled to the processor for storing digital data; an input digitizer coupled to the processor for inputting digital data; an application program stored in one or more machine data memories and accessible by the processor for directing processing of digital data by the processor; a display device coupled to the processor and memory for displaying information derived from digital data processed by the processor; and a plurality of databases or data management systems.

The present disclosure may be described herein in terms of functional block components, screen shots, user interaction descriptions, optional selections, various processing steps, and the like. It should be appreciated that such descriptions may be realized by any number of hardware and/or software components configured to perform the functions described. Accordingly, to implement such descriptions, various integrated circuit components, e.g., memory elements, processing elements, logic elements, look-up tables, and the like may be used, which may carry out a variety of functions under the control of one or more microprocessors or other control devices. Similarly, the software elements of the present disclosure may be implemented with any programming or scripting language such as C, C++, Java, COBOL, assembler, PERL, Visual Basic, SQL Stored Procedures, AJAX, extensible markup language (XML), Flex, Flash, with the various algorithms being implemented with any combination of data structures, objects, processes, routines or other programming elements. Further, it should be noted that embodiments in the present disclosure may employ any number of conventional techniques for data transmission, signaling, data processing, network control, and the like as one skilled in the art will understand. Embodiments of the present disclosure may also include detection or prevention of security issues using various techniques. Additionally, many of the functional units and/or modules herein may be described as being "in communication" with other functional units and/or modules. Being "in communication" refers to any manner and/or way in which functional units and/or modules, such as, but not limited to, computers, laptop computers, PDAs, modules, and other types of hardware and/or software, may be in communication with each other. Some non-limiting examples include communicating, sending, and/or receiving data and metadata via: a network, a wireless network, software, instructions, circuitry, phone lines, Internet lines, satellite signals, electric signals, electrical and magnetic fields and/or pulses, and/or so forth.

Communication among the parties in accordance with the present disclosure may be accomplished through any suitable communication channels, such as, for example, a telephone network, an extranet, an intranet, Internet, point of interaction device (point of sale device, personal digital assistant, cellular phone, kiosk, etc.), online communications, off-line communications, wireless communications, transponder communications, local area network (LAN), wide area network (WAN), networked or linked devices and/or the like. Moreover, although the invention may be implemented with TCP/IP communications protocols, embodiments of the disclosure may also be implemented using IPX, Appletalk, IP-6, NetBIOS, OSI or any number of existing or future protocols. Specific information related to the protocols, standards, and application software utilized in

US 11,638,198 B2

9                                                                    10

connection with the Internet is generally known to those skilled in the art and, as such, need not be detailed herein. See, for example, DILIP NAIK, INTERNET STANDARDS AND PROTOCOLS (1998); JAVA 2 COMPLETE, various authors, (Sybex 1999); DEBORAH RAY AND ERIC RAY, MASTERING HTML 4.0 (1997); and LOSHIN, TCP/IP CLEARLY EXPLAINED (1997), the contents of which are hereby incorporated by reference.

As used herein, "comprising," "including," "containing," "is," "are," "characterized by," and grammatical equivalents thereof are inclusive or open-ended terms that do not exclude additional unrecited elements or method steps unless explicitly stated otherwise.

In order to more fully appreciate the present disclosure and to provide additional related features, the following references are incorporated therein by reference in their entirety:

(1) U.S. Pat. No. 6,122,486 by Tanaka et al. which discloses, a transmission restricting system which has a transmission interruption controlling means for generating and radiating a magnetic field pattern including a command code to command the transmission interruption to a radio communication terminal equipment in a radio-wave transmission-prohibited area, the transmission interruption controlling means being disposed at the entrance or exit of the radio-wave transmission-prohibited area; a transmission interruption releasing means for generating and radiating a magnetic field pattern including a command code to command the releasing of transmission interruption to the radio communication terminal equipment in the radio-wave transmission-prohibited area, the transmission interruption releasing means being disposed at the entrance or exit of the radio-wave transmission-prohibited area; and a radio communication terminal equipment comprising means for detecting a magnetic field pattern including a command code to command the transmission interruption or the releasing of transmission interruption, and means for controlling the process of the transmission interruption or the releasing of transmission interruption according to the result of the detection of the detecting means.

(2) U.S. Pat. No. 6,353,778 by Brown which discloses, an automobile computer control system for limiting the usage of wireless telephones in moving automobiles comprising an implementation for sensing when the velocity of the automobile exceeds a predetermined velocity, a wireless implementation for sensing when the wireless telephone is in use by the driver of the automobile and a function responsive to both of the sensing implementations for limiting the use of the wireless telephone by the driver of the automobile when the velocity of the automobile exceeds the predetermined velocity. For the best safety, the predetermined velocity is any moving velocity. Also, the wireless device for sensing when the velocity of the automobile exceeds a predetermined velocity may be carried out by an infrared device.

(3) U.S. Pat. No. 6,556,810 by Suzuki which discloses, a communication inhibiting apparatus with: disturbing wave generating means for generating a disturbing wave signal which disturbs communications to and from a portable telephone or similar communication terminal equipment; and disturbing wave emitting means for emitting the signal generated by the disturbing wave generating means, as the disturbing wave, to the communication terminal equipment.

(4) U.S. Pat. No. 6,690,940 by Brown et al. which discloses, a system for selectively disabling use of at least selected features of a stand-alone electronic device under a predetermined set of conditions. The system establishes a state of the set of conditions as being satisfied or unsatisfied, communicates the state to the electronic device, and disables the selected features if the state is satisfied. In one embodiment, the system may be advantageously be used to prevent vehicular accidents by at least partially disabling non-emergency use of a wireless telephone in a moving vehicle. In another embodiment, the system may be used to disable features of an electronic device within a predetermined area having a boundary that is independent of a communications network cell.

(5) U.S. Pat. No. 6,973,333 by O'Neil which discloses restrictions on use of a cellular telephone in a vehicle, such as an automobile, that are imposed using a global position system (GPS) device to determine the location of a vehicle in relation to geographic regions in which legal or customer restrictions on cellular telephone use are to be imposed. Network or local short-range wireless transmitters supply information to a cellular telephone describing potentially applicable restriction information retrieved from network databases. In response, a cellular telephone determines applicability of such restrictions and applies them to further use of the cellular telephone while such restrictions continue to apply. Alternative arrangements allow vehicle-based or network based processing of region and restrictions information to yield command messages to cellular telephones to control their further us

(6) U.S. Pat. No. 7,064,656 by Belcher et al. which discloses a controller to prevent access or utilization by a vehicle operator to communications devices installed on the vehicle when the vehicle is in motion thereby reducing distractions of the operator.

(7) U.S. Pat. No. 7,107,058 by Inoguchi et al. which discloses a printer that enables a determination whether a failure has occurred in a device during initialization or a radio wave condition is bad. Receive electric field strength during a time period from a time at which a turn-off message is outputted to a time at which turn-on message is outputted and receive electric field strength after the turn-on message is outputted are measured. The measurements are compared with each other and information indicating the condition of each of a plurality of channels is printed out according to the results of the comparison. A user can reference the printed information to determine whether a failure has occurred in a device or the radio wave condition is bad.

(8) U.S. Pat. No. 7,181,229 by Singh et al which discloses a system for disabling a cell phone in the presence of certain conditions, and for switching it off in the presence of some other conditions, while allowing its use in the normal fashion in the absence of these two sets of conditions. Thus, this system regulates cell phone use in accordance with specified restrictions in specific locations, and allows its normal functioning when these restrictions are not required. Specifically, a first condition is an attempt to operate a cell phone by the driver of a vehicle having its ignition on and/or moving above a certain speed. In such a condition the system would automatically disable the OK switch of a cell phone and may also perform the CALL END function. In the second condition the system automatically switches off any cell phone in the ON condition

US 11,638,198 B2

11    12

being carried on the person of an individual occupying a seat in an aircraft, or a committee room, or any other such location where such a restriction is envisaged. The system also makes a provision for automatic sequential dialing of a specified set of numbers like the police, medical services etc. during an emergency by allowing overriding any regulatory restriction. In addition, U.S. Pat. No. 7,181,229 also relates to control circuits provided in the system for preventing tampering with or bypassing the system by cell phone users.

(9) U.S. Pat. No. 7,206,615 by Ochi et al. which discloses a first transmitter that outputs a request signal requesting a response to a mobile device toward an area including a driver's seat and its neighborhood, and a second transmitter outputs a request signal toward an area covering the entire vehicle. The mobile device transmits a response signal to a receiver if receiving the request signal transmitted from the first or second transmitter. The controller detects the position of the mobile device based on a communication result between the mobile device and the receiver in response to the request signals transmitted from the first and second transmitters.

(10) U.S. Pat. No. 7,260,390 by Skinner et al. which discloses a panel provided to a wireless device that turns off all RF capability of the wireless device (including, but not limited to notifications, wireless web clipping, instant messaging, email sending/receiving, phone calls, etc.). The panel is brought up on a screen of the wireless device by pressing a programmed hard button for more than 1 second. Once the RF capability has been turned off, if the user attempts to access a program or other device that requires the RF capabilities, a notification is displayed that identifies the RF capabilities as being disabled and prompts the user whether to continue. If the user continues, the RF device is automatically enabled, otherwise the RF device remains disabled.

(11) U.S. Pat. No. 7,343,148 by O'Neil which discloses, restrictions on use of a cellular telephone in a vehicle, such as an automobile, that are imposed using a global position system (GPS) device to determine the location of a vehicle in relation to geographic regions in which legal or customer restrictions on cellular telephone use are to be imposed. Network or local short-range wireless transmitters supply information to a cellular telephone describing potentially applicable restriction information retrieved from network databases. In response, a cellular telephone determines applicability of such restrictions and applies them to further use of the cellular telephone while such restrictions continue to apply. Alternative arrangements allow vehicle-based or network based processing of region and restrictions information to yield command messages to cellular telephones to control their further use.

(12) U.S. Pat. No. 7,369,845 by Keohane et al. which discloses, a portable communication device that detects a current speed of travel of the portable communication device independent of any vehicle temporarily transporting the portable communication device. A speed based setting controller of the portable communication device compares the current speed to at least one threshold value set at the portable communication device. Responsive to the current speed exceeding the threshold value, the speed based setting controller automatically assigns a separate speed based setting to a current setting for each feature assigned to the thresh-

old value, wherein each current setting for each feature designates the operability of that feature within the portable communication device, such that the current setting for each feature adjusts with a speed of travel as detected by the portable communication device.

(13) U.S. Pat. No. 7,395,046 by Hossain et al., which discloses a method and apparatus for enhancing the probability of a successful emergency call completion and emergency callback on a mobile station in a network, the method comprising the steps of: during an emergency call attempt, monitoring whether the mobile station has received a non-voice service request from the network and, if yes, ignoring the non-voice service request. Further, during a callback period, monitoring whether the mobile station has received a service request from the network and, if yes, ignoring the service request if the service request is a non-voice service request that is anything but a position location service request. Further, during a callback period, monitoring whether a user attempts to initiate a non-voice service request that is anything but a position location service request, and if yes ignoring the non-voice service request.

(14) U.S. Pat. No. 7,400,891 by Aaron which discloses wireless terminals that are remotely controlled by identifying a wireless terminal that is located at a premises and obtaining at least one operational authorization rule for the wireless terminal that was identified, and that applies to the premises at which the wireless terminal is located. Selected operations of the wireless terminal are disabled and/or enabled in response to the at least one operational authorization rule that was obtained for the wireless terminal that was identified and that applies to the premises at which the wireless terminal is locate

(15) U.S. Pat. No. 7,471,929 by Fujioka et al. which discloses a device and a method for telephone countermeasure in using a telephone during driving which can automatically suppress communication of only a driver in a vehicle.[Means For Solving Problems] The device for telephone countermeasure includes a database (**3**), a driver judgment unit, and a mode switching unit. The database (**3**) contains driver face data (**3-1**) and a telephone number (**3-2**) of a mobile telephone (**7**) used by the driver for each of the drivers. The driver judgment unit identifies the current driver of the vehicle in the database (**3**) by the face authentication. The mode switching unit extracts the telephone number (**3-2**) of the mobile telephone (**7**) used by the identified driver from the database (**3**) and switches the mobile telephone (**7**) of the driver to a drive mode such as a message recording mode by using the telephone number.

(16) U.S. Pat. No. 7,734,315 by Rathus et al. which discloses a method and system that limits the use of a communication device present in an area controlled by an intelligent controller. The intelligent controller detects any present communication devices in the area and conducts an inventory providing information about each detected device. The intelligent controller compares that information to a standard of use data, which specifies the conditions need to be present for allowing the usage of a communication device. If such conditions are not met, the intelligent controller sends commands to the communication device to restrict its functionality. Else if, the intelligent controller is incapable of restricting the communication device, it can

US 11,638,198 B2

13

notify authorities of unauthorized usage of a communication device in the restricted area.

(17) U.S. Pat. No. 7,640,101 by Pair et al. which discloses a system that uses a gps receiver and a computer program product to disable a feature of an electronic device when movement of the receiver is detected. Speed data from a gps data stream is monitored. When the speed of the gps receiver exceeds a predetermined value, the desired feature of the electronic device is disabled. For example, when the speed of the gps receiver exceeds 0.5 knots, a windows function call is executed to set a desired display element as a top window on a display screen. The system may allow for temporary enabling of disabled features and for rapid enabling of disabled features when motion stops. The system may also include navigational software. A manufacturer may also use a proprietary combination of one or more disabled data fields in a gps data stream to identify gps receivers approved for use with the system.

(18) U.S. Pat. No. 7,474,264 by Bolduc et al. which discloses a system and method for detecting use of RF transmit devices (e.g., cellular phones) in a vehicle. The system includes a first RF antenna for detecting signal strength of an RF signals transmit device at a first location in a vehicle and a power first detector for generating a first output signal indicative thereof. The system also includes a second antenna for detecting signal strength of the RF signals at a second location in the vehicle and a second power detector for generating a second output signal indicative thereof. The system further includes a signal processor for processing the first and second output signals to determine the presence of an RF transmit device in use in the vehicle and to further determine the location of the RF transmit device to determine if a driver is using the device.

(19) U.S. Pat. No. 7,477,135 by Belcher et al. which discloses an access (utilization) controller to restrict or block visual or aural interaction between a vehicle operator/driver and mobile communications and information devices such as computers, mobile telephones, pagers, personal digital assistants (PDAs), and the like mounted on or used in the vehicle is disclosed. The utilization controller comprises sensors to detect motion or "potential" motion of the vehicle, a processor receiving data from the sensors and inhibitor means responsive to the processor to "blank out" or otherwise inhibit any distracting visual or aural output from the communications or information devices while the vehicle is in motion or about to move. The sensor data such as speedometer, transmission gear position indicator, antilock brakes and others are extracted from a vehicle's internal monitoring and control systems.

(20) U.S. Pat. No. 7,619,507 by Santos et al. which discloses aspects that provide a system and method for receiving information in a vehicle. Information pertaining to the vehicle's driver may be stored. Information pertaining to the vehicle's driver may be made audile through the vehicle's radio system.

(21) U.S. Pat. No. 2002/0198005 by Hilton et al. which discloses, a logic based control system to modify and improve operations of wireless communications devices and the operating systems of a plurality of portable wireless communications devices by continuously, selectively and automatically controlling, enabling and/or disabling access to the transmission and reception of portable wireless communication

14

devices depending on the factors of velocity, location and/or time of the wireless communication device, while continually enabling access to emergency communications at any time, location and/or velocity.

(22) U.S. Pat. No. 2005/0170850 by Edwards et al. which discloses, the methods and apparatuses for selectively disabling functionality of a device detect a device; detecting a device type of the device; and transmitting a signal to the device for selectively disabling a function of the device based on the device type.

(23) U.S. Pat. No. 2005/0184860 by Taruki, which discloses a portable information terminal controlling system comprising the detector-transmitter and the cellular phone. The detector-transmitter includes the automobile moving state detecting unit and the control information transmitting unit. The cellular phone includes the function controlling unit, the transmitter-receiver, the display and the control unit. When the detector-transmitter detects that an automobile is moving, the detector-transmitter sends control information to a function controlling unit. When the detector-transmitter detects that an automobile is moving, the function controlling unit limits a part of a display function and a communication function of a portable information terminal, or limits all functions of the portable information terminal, and makes the portable information terminal be in a difficult state to use by giving an instruction to the control unit. Judgment of the driver's use of the portable information terminal is performed based on a signal arriving time and signal strength between the detector-transmitter and the function controlling unit, or an image extract with a camera included in the detector-transmitter.

(24) U.S. Pat. No. 2005/0255874 by Stewart-Baxter et al. which discloses a system and method for detecting motion of a cell phone and disabling the use of the cell phone while moving or driving. The inventive system includes: a cell phone; a sensor to detect motion of the cell phone; software in the cell phone to disable the use of the cell phone when motion is detected. In a preferred embodiment, the system also recognizes the near proximity of an automobile and disables the use of the cell phone in this near proximity.

(25) U.S. Pat. No. 2006/0099940 by Pfleging et al. which discloses a method for changing the status of a mobile apparatus based upon the velocity of the mobile apparatus. The communication system determines the velocity of a mobile apparatus by calculating the difference between a first position of a mobile apparatus at a first time and a second position of the mobile apparatus at a second time. If the velocity of the mobile apparatus exceeds a predetermined threshold, the communication system changes the status of the mobile apparatus to a sleep state and ends a call that the mobile apparatus is involved in.

(26) U.S. Pat. No. 2007/0072616 by Irani which discloses, a method for preventing cellular phone usage while driving. In one embodiment a GPS system incorporated into the workings of the cellular phone is used to detect that the phone is in motion, and that the rate of movement exceeds some preset value indicating that the phone is in a moving vehicle. Having detected motion the phone will deliver a number of options ranging from complete shutdown until motion stops, to use only for emergency purposes, to only limited use, or to complete use by interjecting a preset PIN or other such password which will allow the cellular phone user

US 11,638,198 B2

15

to override the phone shutdown mechanism. Other alternate means for detecting motion include triangulation between numerous towers, to signal strength variation from a single tower, to signals generated by miniature accelerometers and velocimeters imbedded in the phone specifically for detecting rate of movement.

(27) U.S. Pat. No. 2008/0139183 by Keohane et al. which discloses, a portable communication device that detects a current speed of travel of the portable communication device independent of any vehicle temporarily transporting the portable communication device. A speed based setting controller of the portable communication device compares the current speed to at least one threshold value set at the portable communication device. Responsive to the current speed exceeding the threshold value, the speed based setting controller automatically assigns a separate speed based setting to a current setting for each feature assigned to the threshold value, wherein each current setting for each feature designates the operability of that feature within the portable communication device, such that the current setting for each feature adjusts with a speed of travel as detected by the portable communication device.

(28) U.S. Pat. No. 2008/0214211 by Lipovski which discloses, a system for selectively restricting or enabling the use of a cellular telephone module in a zone is described, comprising: a control signal transmitter for generating a control signal at an entrance to the zone or alternatively generating control signals throughout the zone; the cellular telephone including a module; a receiver module within the cellular telephone responsive to the control signal for generating a module enable/restrict upon receipt of the control signal; and a switch within the cellular telephone responsive to the module enable/restrict for selectively enabling or inhibiting the operation of the module for a predetermined period of time after receipt of the control signal. Additionally, this system's cellular telephone can dial a telephone, send a message to it, receive a text message from it, and send digits to it, to handle emergencies or conduct business. Finally, the system can remind owners to recharge their cellular telephone batteries.

(29) U.S. Pat. No. 2009/0004968 by Miyake which discloses an in-vehicle apparatus that determines in the vicinity the presence of a portable terminal designated with a device requiring restriction on radio transmission as a device name thereof. Radio transmission from a cellular phone is thereby restricted. In contrast, when determining in the vicinity the absence of the portable terminal designated with a device requiring restriction on radio transmission, the restriction on radio transmission from the cellular phone is removed. In the event of a person with a cardiac pacemaker getting on the vehicle, if the person carries a portable terminal designated with a device requiring restriction on radio transmission as a device name, the concern of the person about a possibility that the cellular phone has a bad influence on the cardiac pacemaker can be prevented.

(30) U.S. Pat. No. 2009/0029675 by Steinmetz, et al. which discloses, a safety device for automotive vehicles (cars, buses and trucks) or rail locomotives. The device inhibits use of cellular telephones and other communication devices that run the risk of distracting a driver/operator while the vehicle is in motion. Several techniques for inhibiting use are described which can

16

be used individually or in a complementary combinations. In one technique, a rapidly varying signal level is created local to the communication device. The variations exceed the operational limits of the system, thereby inhibiting communications. In another technique, the safety device emits radiation that interferes with the reception of signals by the communication device only within the interior of the vehicle and will not interfere with cell phones or wireless devises outside the automotive vehicle or rail locomotive. As another alternative, masking signals also may be generated to prevent signals sent by the communication device within the vehicle from being intelligible at receiving stations outside the vehicle.

(31) U.S. Pat. No. 2009/00895744 by Sellin et al. which discloses, a system for controlling access to a network includes a wireless switch configured for radio frequency communication with a mobile unit associated with a radio frequency identification tag. The wireless switch is adapted for determining if a radio frequency identification tag is located within a first area, and enabling the mobile unit to access the network according to a first scheme if the mobile unit is located within the first area.

(32) U.S. Pat. No. 2009/0111422 by Bremer et al. which discloses, control systems and methods that are provided for controlling a personal communication device (PCD), such as a wireless telephone, personal data assistant (PDA), etc. The control systems and methods enable the controlled PCD (CPCD): (1) to determine (a) CPCD motion (speed, acceleration, or both) and/or (b) geographical location and (2) to (a) modify (enable, disable, and/or otherwise change) one or more CPCD functions based at least in part on the CPCD motion and/or geographical location and/or (b) communicate an alert (locally and/or to a remote communication device). The control of CPCD functions and alerts may also be dependent on other factors, such as the laws of the authoritative legal jurisdiction wherein the CPCD is located. The operation of the following CPCD functions can be modified, as nonlimiting examples: keypad, image display, microphone, speaker, camera, voice call out, voice call answer, text message creation, text message transmission, text message reception, email creation, email reception, image creation, image reception, Internet browsing, gaming, ring signal operation, communication signal transmission, and communication signal reception.

FIG. 1 is a diagram of an embodiment of the mobile services control system 10. The system 10 includes the Vehicle Detection System (VDS) 30 which detects the operational status of a vehicle 15 and may also detect the identity and presence of one or more Controllable Mobile Devices (CMD) 25 within the vehicle, and also may detect the position of the one or more CMDs 25 within the vehicle occupant enclosure 20 (e.g., the passenger seating compartment of the vehicle wherein the driver or operator also resides). The Controllable Mobile Device (CMD) 25 provides a person with access to one or more of a plurality of data and/or communication services, also often called "applications." The CMD 25 (as detailed below in FIG. 2) is typically made operable by a subscriber contracting with a communication service provider (e.g., a wireless carrier) for obtaining wireless communication services. The subscriber may be an individual person, a parent in a family, a business, or any person who wants the services offered to the CMD 25. These types of people may also be an actual user

US 11,638,198 B2

17

of the CMD **25**, or the actual user to be a different person from the subscriber. For example, a parent may be a subscriber for providing communication services to a CMD **25** for one of the parent's teenagers who drives a family vehicle. Alternately, a business (the subscriber) may contract with a wireless carrier to provide communication services to a CMD **25** for one of their employees who drives a company vehicle, as in a transportation vehicle like a bus, or a delivery vehicle, or another type of company-owned vehicle.

The Controllable Mobile Device (CMD) **25** provides the user of the CMD with communication services (e.g., voice, text messaging, email, Internet access, gaming, video, and other services) via a wireless connection **50** through a wireless network **45** from a Mobile Device Service Provider (MDSP) **130** (e.g., a cellular or WiMAX wireless carrier). The MDSP **130** is operational to enable or disable services provided to each CMD **25** and records each instance a user uses a service in a mobile usage database **135**.

In addition to the plurality of services available through a Controllable Mobile Device (CMD) **25**, the CMD may also provide a unique identification capability which can be detected over-the-air from one or more position detectors and/or sensors **37**, **38**, **39** (three are shown in FIG. **1**) generally positioned in or around the vehicle occupant enclosure **20**. The one or more position detectors and/or sensors **37**, **38**, **39** may be provided as part of the Vehicle Detection System (VDS) **30** as detailed below in FIG. **3**. Each of the position detectors **37**, **38**, **39** has a unique identifier which can be detected over-the-air to verify that detector is still present at the location it was installed. Further, the VDS **35** includes a motion sensing capability to determine when the vehicle **15** is moving and may also include a detection engine **300** (FIG. **3**) to combine position information from the one or more detectors and/or sensors **37**, **38**, **39** to assist in determining the position of the CMD **25** within the vehicle **15**. The VDS **30** may also be operational to detect the position of one or more CMDs **25** simultaneously.

In one embodiment of the mobile services control system **10**, the Vehicle Detection System (VDS) **30** is operational to send data, via wireless signal **65**, to a wireless network **60** (which may or may not be identical to the network **45**), and subsequently to Vehicle Service Provider (VSP) **100** also included as part of the system **10** in at least some embodiments thereof. The VSP **100** may be provided by a network/service operator (wireless carrier) which (via the wireless network **60**) provides a mobile (wireless) data connection to a plurality of VDSs **30** in a plurality of vehicles **15**. Alternatively, the VSP **100** may not be operated by the wireless carrier operating the network **60**, and instead is, e.g., operated by an entity that operates the mobile services control system **10**. The VDS **30** may physically be located in various positions within the vehicle **15**, including, but not limited to, entirely within the vehicle occupant enclosure **20** (e.g., under the dashboard), or entirely outside of the vehicle occupant enclosure **20** (e.g., in the engine or trunk compartments), or partially within and partially outside the vehicle occupant enclosure **20** (e.g., with the VDS base unit **35** under the dashboard and the one or more detectors/sensors **37**, **38**, and **39** located elsewhere in the vehicle **15**).

The vehicle plus mobile detected information (as also described in (c) of the Summary section hereinabove) is transmitted over wireless connection **65** (i.e., to a wireless base station **70**), and such information may include position information indicative of whether the Controllable Mobile Device (CMD) **25** is within a restricted zone for the vehicle **15**, or outside of the restricted zone, wherein such a

18

restricted zone may be a geospatial envelop (2-dimensional or 3-dimensional) within the vehicle occupant enclosure **20** that is particularly associated with where an occupant would be positioned for operating the vehicle. The vehicle plus mobile detected information may further include detailed information describing a more precise position of the CMD **25** within such a restricted zone. The position information may be defined in a 3-dimensional spatial grid of x, y, and z coordinate offsets from a reference point, which might be a point adjacent to or in the base unit **35** of the Vehicle Detection System (VDS) **30** with optional resolutions in inches or centimeters, etc, or the position information may be provided as a one dimensional distance from, e.g., the detector and/or sensor **37** located near the driver's seat (more generally, the operator's position). Further, the data transmitted via connection **65** may include vehicle state information as to whether the vehicle **15** is moving and the operational status of the VDS **30** itself. In one embodiment, all of the data may be transmitted over the wireless connection **65** to the Vehicle Service Provider (VSP) **100** in a real-time, near-continuous stream of information.

Alternately and/or optionally, the Vehicle Detection System (VDS) **30** may store the vehicle status information related to each restricted zone, each CMD **25** position, and other data in local non-volatile memory within the VDS for later forwarding to the Safe Driving Registration System (SDRS) **105** via the Vehicle Service Provider (VSP) **100**. The VSP **100** may provide multiple network access methods by which the VDS **30** may forward the stored data. In one embodiment, when the VDS **30** enters receive/transmit range of VSP's **100** network **60**, the VDS may be operational to transmit the stored data to wireless network base station **70** via wireless signal **65**. In another embodiment, the VSP **100** may provide access to the VDS **30** through a data network **90**. For example a wireless connection and signaling between the VSP **100** and the VDS **30** may be tunneled through an Internet data connection (e.g., TCP/IP) wherein the data network **90** is used to communicate data to the Mobile Services Control System **10**, e.g., when the vehicle **15** resides at the premises **85** as shown in FIG. **1**. Examples of this embodiment include, but are not limited to, the user driving their vehicle into a home garage, or a business parking lot, or business depot garage (for commercial uses), wherein the VDS **30** transmits the stored data via an over-the-air connection **75** to an on premises **85** wireless transceiver **80**, such as, for example a Wireless Local Area Network (WLAN)/Wi-Fi, femtocell or picocell, Bluetooth, Wireless USB, or some similar connection. The wireless transceiver **80** is operational to connect to a wide area data network, such as, for example, the Internet **90**. Alternately and/or optionally, the VDS **30** may use a wired LAN connection **75** at the premises building **85** to connect through the wide area network **90** to the VSP **100**.

Alternately and/or optionally, the Vehicle Detection System (VDS) **30** may be configured and operable to transmit the vehicle plus mobile detected information and other data directly to the Controllable Mobile Device (CMD) **25** via an over-the-air connection **40**. In this configuration both the CMD **25** and the VDS **30** include vehicle wireless network interfaces, such as, for example a WLAN/Wi-Fi, femtocell or picocell wireless, Bluetooth, Wireless USB, or some similar connection. In this configuration, control software on the CMD **25** may determine what action to take on specific services or applications operating on the CMD, such actions may include, but is not limited to: disabling a specific service, a set of services, or all services on the CMD; enabling a specific service, a set of services, or all services

US 11,638,198 B2

19                                    20

on the CMD; or enabling a specific service, a set of services, or all services on the CMD but also delivering a warning to the user via a CMD user interface. In one embodiment, the vehicle operational status, restricted zone, position, and other data transmitted directly to the CMD 25 via an over-the-air connection 40, may operate directly with a specially constructed battery on the CMD, which in turn disables the entire CMD. The special battery (not shown) may be constructed in the same shape, size, and form of a standard battery for the CMD with the addition of internal digital logic which controls the flow of power from the battery to the CMD wherein the digital logic receives the vehicle operational status, restricted zone, position, and other data transmitted via over-the-air connection 40 and decides whether to enable or disable the flow of power to the CMD.

Returning to FIG. 1, in one embodiment the Vehicle Service Provider (VSP) 100 and the Mobile Device Service Provider (MDSP) 130 may be different business entities wherein the wireless networks 60 and 45 are physically separate and distinct networks which may, or may not, use different wireless technologies. When VSP 100 and MDSP 130 are different service providers data may be exchanged between them via connection 145 when no data format or signaling protocol conversion is needed, or via a Service Provider Interworking function 140 when some type of interworking is necessary. Alternately and/or optionally, the VSP 100 and the MDSP 130 may be the same business entity, or related business entities that act as a single business entity, wherein the wireless networks 60 and 45 may be the same physical network.

The Vehicle Service Provider (VSP) 100 may be operational to deliver the vehicle plus mobile detected information to the Safe Driving Registration System (SDRS) 105 for storage in the Safe Driving Database 110, also included in the mobile services control system 10. The SDRS 105 may be provided by the Vehicle Service Provider (VSP) 100, the Mobile Device Service Provider (MDSP) 130, or a third party service provider as one skilled in the art will understand. The SDRS 105 may store the vehicle plus mobile detected information in a data management system 110, also denoted herein as the Safe Driving Database 110, which may be considered as a component of the system 10 in at least some embodiments. Note that the Safe Driving Database 110 may also contain, but is not limited to, information identifying each subscriber subscribing to the services provided by the mobile services control system 10, registration information identifying the Vehicle Detection System (VDS) 30 for a specific vehicle managed/owned by the subscriber, registration information identifying one or more mobile devices 25 for this subscriber, customizable service control settings (e.g., allowed or restricted services, time-of-day controls, report options, etc.), and information that describes subscribers to the SDRS 105 (e.g., name, address, etc.). Subscribers subscribing to the services provided by the mobile services control system 10 include, for example, parents who register a vehicle 15 for a teenage child and equip it with the VDS 30 to disable use of the teen's CMDs 25 within that vehicle. Note that other entities may access the subscriber data within the Safe Driving Database 110. These other entities may include, for example, one or more Mobile Device Service Providers (MDSP) 130 which provide mobile wireless services (e.g., voice, text messaging, email, Internet access, gaming, etc.) to, e.g., a teenager's CMD 25. Note that in at least some embodiment of the

mobile services control system 10, such providers 130 are not part of the system 10, but instead, are necessary for the operation of the system 10.

In addition, the Safe Driving Registration System (SDRS) 105 may be operational to provide user interfaces, such as, for example, Internet web-based interfaces 115 for users (e.g., subscribers to the services provided by the mobile services control system 10) to configure data monitoring and service control settings for the one or more vehicles 15 and one or more CMDs 25 such users manage. The service control settings may define which mobile services (e.g., voice, text messaging, email, Internet access, gaming, etc.) to allow and which to disable under which conditions (e.g., when the vehicle is moving). Alternately and/or optionally service control settings may be provided as part of the Service Decision System 125 (FIGS. 1 and 6). Further, the SDRS 105 may provide each subscriber with configurable settings for receiving alert messages (e.g., when a vehicle 15, registered with the mobile services control system 10, is in operation and/or when a registered Controllable Mobile Device (CMD) 25 is turned on in the moving vehicle 15, and/or when a registered CMD is within a restricted zone of the vehicle 15). The alert messages may include, but are not limited to, a text message, and email message, or a phone call to the subscriber alerting the subscriber about the operational status of the registered vehicle 15 or the registered CMD 25. The SDRS 105 may also provide user interfaces 115 for the subscriber to access reports of the vehicle 15 and CMD 25 status or usage, or the SDRS may automatically generate reports.

In one embodiment, the Safe Driving Database 110 (and/or the SDRS 105) may be hosted in a network, such as, any location or network site connected to the Internet and independently operated from the VSP 100 and/or MDSP 130. Alternatively, the Safe Driving Database 110 (and/or the SDRS 105) may be hosted at a location or network site administered by a network-based VSP 100, or by a network-based MDSP 130, wherein the Safe Driving Database 110 (and/or the SDRS 105) may be operated by the VSP 100, the MDSP 130, or by a third-party. As such, the Safe Driving Database 110 may operate as a national database monitoring and managing all registered vehicles 15 with multiple mobile service providers 130 that are able to access the Safe Driving Database 110. Alternately, the Safe Driving Database 110 may be operated by an independent "third party" company (e.g., a software or insurance company) for a specific set of subscribers, and/or within a specified geographic region, or the Safe Driving Database may be managed and operated by the Vehicle Service Provider (VSP) 100 or the Mobile Device Service Provider (MDSP) 130.

In one embodiment, the Safe Driving Registration System (SDRS) 105 may be implemented as two or more modules, where one or more of those modules is hosted on a subscriber's computing platform, such as, for example, a home personal computer, a subscriber's mobile device, or some similar platform, and with one or more other modules hosted in a service provider 130 network. This arrangement allows distributed report and control management from a remote subscriber computer. In yet another embodiment, all modules of the SDRS 105 may be located on a subscriber computing platform.

In one embodiment, the registrations of one or more CMDs 25 are associated in the SDRS 105 with the registration of the VDS 30 for a specific vehicle 15. The mobile services control system 10 may simply be operable to control services (enable or disable) on the one or more registered CMDs 25 whenever motion is detected by the

US 11,638,198 B2

VDS **30** in the associated vehicle **15**, or alternately stated, the system **10** does not detect the presence or position of a CMD **25** within the registered vehicle **15**, and instead assumes that services on the one or more registered CMDs **25** should be disabled whenever the vehicle **15** is in motion. With this configuration of mobile services control system **10**, there may be situations where the subscriber to the mobile control services system **10** knows that the user of CMD **25** (e.g., their teenaged child, or their employee) will not be using the associated vehicle **15** (registered through the vehicle's VDS **30**) on a particular day, or during a particular time. In such situations, the vehicle **15** may be used by another person and may be moving while the subscriber knows the registered CMD **25** is not in the vehicle **15**. A similar situation may arise when the subscriber and user are one in the same person and that person drops their vehicle **15** off at an auto repair shop for work during the day and takes their registered CMD **25** with them. Throughout that day the vehicle **15** may be driven by repair shop personnel, but the CMD **25** is with the subscriber/user where it is desirable to allow full use of the CMD **25** services.

Alternately and/or optionally, the mobile services control system **10** may be operational to provide an override function to the subscriber or user of the mobile services control system **10** which allows the subscriber or user to temporarily override the control of services on the CMD **25** by selecting an option via a user interface **115** (e.g., an Internet web interface, a mobile device interface, some other computer interface, etc.), or via an option displayed on the CMD **25**. Alternately and/or optimally, the override may be initiated by the user of the CMD **25** by sending a simple text message or voice message to a specified number designated by the Service Decision System **125**, or alternately, the Safe Driving Registration System **105** to receive override messages, such message initiating the override for a specific amount of time specified by the user of the CMD **25** via the message. In such a case, the Service Decision System **125** or alternately the Safe Driving Registration System **105** may send an email or voice or text alert to the subscriber of the mobile services control system **10** that may also include information of the times that the associated vehicle **15** was in motion in relation to the time of the override. These text alerts then provide a method for the subscriber to change the configuration of the mobile services control system **10** to disallow user of CMD **25** to self-generate override messages if this feature is being abused. Alternately and/or optionally, in one embodiment, when: (i) the VSP **100** and MDSP **130** are operated by the same business entity, and wireless networks **45** and **60** are one in the same network (or substantially so), or (ii) the VSP **100** and MDSP **130** are different business entities but are sharing information to support increased operability of the Mobile Services Control System **10**, then in either case, information related to the location of the base stations in wireless communication with the CMD **25** and VDS **30** (e.g., base stations **70** and **55** in FIG. **1**, and which may be the same base station) may be used to programmatically deduce whether the Controllable Mobile Device (CMD) **25** is possibly within the vehicle **15** having the VDS **30**, or probably not within the vehicle **15**. If the VDS **30** is connected to a unified wireless network, including both the network **60** and the network **45** (herein the combined network also denoted **60+45**) through one base station **70**, but the CMD **25** is connected through a different base station **55** then the mobile services control system **10** may use this information and predefined geographical information about the locations of base stations **70** and **55**, to determine if the CMD **25** is physically in a different location from the

location of the VDS **30** and vehicle **15**. If the mobile services control system **10** concludes that the CMD **25** is not in the same base station area as the vehicle's **15** VDS **30** then the mobile services control system may temporarily suspend control of services on the CMD **25**. Alternately and/or optionally, this determination may be made by the location of VDS **30** with respect to CMD **25** by triangulation and calculation of multiple cell tower signals received from VDS **30** and CMD **25**. Alternately and/or optionally, since information indicative of relative signal strength from wireless communication changes with movement of a CMD **25**, such movement can be used to determine the approximate velocity of both the VDS **30** and CMD **25**, and such approximate velocities can be compared to conclude if the CMD **25** is in the same vehicle as the VDS **30**, and if not, temporarily suspend control of services on the CMD **25**.

In one embodiment of the mobile services control system **10**, the Services Decision System **125** may be operational to receive the vehicle plus mobile detected information (e.g., vehicle operational status, CMD position information, restricted zone data, etc.) and service control settings (e.g., subscriber service selections, subscriber preferences, service provider options, etc.) to determine for each managed communication service whether to enable or disable the service. The vehicle plus mobile detected information may be received by the Service Decision System **125** periodically at set intervals or in a real-time near-continuous stream of data. A high level flowchart of the processing performed by the Service Decision System **125** is described hereinbelow, and illustrated in FIG. **7**.

In one embodiment, the Service Decision System **125** may be operational to connect with the Mobile Device Service Provider (MDSP) **130** to receive the vehicle plus mobile detected information from the MDSP via the Vehicle Service Provider (VSP) **100** from the Safe Driving Registration System (SDRS) **105** where the vehicle plus mobile detected information is stored in the Safe Driving Database **110**. Data is transmitted to and from between the MDSP **130** and VSP **100** via a direct connection **145** when a compatible data format and signaling interfaces exist, or alternately/optionally via Service Provider Interworking function **140** when some type of data format or signaling conversion is necessary. The vehicle plus mobile detected information may be transmitted based on service provider access parameters by periodic polling and "pull" requests from the MDSP **130** to the Safe Driving Registration System (SDRS), or based on event-driven "push" transmissions from the SDRS **105** to the MDSP **130**. In one embodiment, these vehicle plus mobile detected information is transmitted in a real-time data stream to allow real-time control of the plurality of services on each CMD **25** as it is moved in and out of the restricted zone in the vehicle occupant enclosure **20**. In this later configuration, the Service Decision System **125** forwards the determinations it makes (e.g., to enable or disable a specific service) on to the MDSP **130** which, in turn, may enable or disable one or more of the services on the CMD **25**. Further, in this configuration, the Service Decision System **125** may be physically hosted by the MDSP **130** in the MDSP's network, or hosted by a third party service provider, which may, or may not, be the same service provider hosting the Safe Driving Registration System (SDRS) **105** and/or Safe Driving Database **110**.

Alternately and/or optionally, the Service Decision System **125** may be operational to connect directly via communications path **120** to the SDRS **105** to receive the vehicle plus mobile detected information from the SDRS **105** without transiting the VSP **100** and MDSP **130**. In this configu-

US 11,638,198 B2

ration, data may still be transmitted between the SDRS **105** and Service Decision System **125** using a polling ("pull"), or event-driven ("push") method, or real-time near continuous stream. In this configuration, the Service Decision System **125** forwards the determinations it makes to enable or disable a CMD **25** specific service to the SDRS **105** which sets an enable/disable flag for each such service in the SDRS, which the MDSP **130** is then operational to query that flag via a "pull" request or "push" notification. Further, in this configuration, the Service Decision System **125** may be physically hosted by the same service provider hosting the Safe Driving Registration System (SDRS) **105** and/or Safe Driving Database **110**, or possibly by a third party service provider.

The Service Decision System **125** also provides a user interface **115** (e.g., a computer software interface, an Internet web interface, a mobile device interface, or some other user interface) for subscribers to view and manage their service control settings, for administrators of the Mobile Device Service Provider (MDSP) **130** to manage operational settings, and/or for administrators of the SDRS **105** to manage operational parameters.

Disclosed in FIG. **2** is one embodiment of the functional components that may be provided on a Controllable Mobile Device (CMD) **25**. The CMD **25** may be a cell phone, smart phone, Personal Digital Assistant (PDA), a personal computer with wireless network connectivity, a mobile digital TV, an in-vehicle navigation system, or any other mobile communication device which offers services, also known as "applications," to a user. For the present disclosure, such mobile communication devices **25** include various mobile communication devices that can be moved in and out of a vehicle **15** or moved around within a vehicle **15**, as well as devices that move with the vehicle **15**, that is, devices that may be built-in to a vehicle (e.g., a navigation system), but nonetheless provide services that may be distracting to a driver while the vehicle is moving. One with ordinary skill in the art may envision built-in vehicle navigation systems one day providing all of the typical cell phone services like voice, text messaging, video, Internet access, mobile DTV, and games. As such, to control the use of potentially distracting services on a mobile communication device within the restricted zone of a moving vehicle, devices fixed to the vehicle, (e.g., attached to, or built-in, as CMDs) are disclosed herein that assist in controlling a driver using such services.

The implementation of the Controllable Mobile Device (CMD) **25** may include an operating system **210** and a plurality of services/applications **205**, including, but not limited to, voice, text messaging, video, Internet access, games, and other types of service. The term "service" in the present context, includes interactive mobile communication services, display or output only services, and input only services. The CMD **25** may also include a vehicle wireless network interface **215** which supports a typical wireless local area network (WLAN), for example, Wi-Fi, or some other wireless local network capability, like, for example, femtocell or picocell wireless, Bluetooth, Wireless USB, etc. The vehicle wireless network **215** may be configured for wireless connection to the Vehicle Detection System (VDS) **30**, or other wireless devices in proximity to the CMD **25**. In addition, as a mobile device, the CMD **25** also provides a service provider wireless network interface **220** which connects the CMD **25** to the Mobile Device's Service Provider (MDSP) **130** (i.e., wireless network **45**), shown in FIG. **1**, over a wireless connection **50**.

The Vehicle Detection System **30** (VDS) may be operational to detect a Controllable Mobile Device **25** (CMD) through the Mobile Device Air Identifier **200** (FIG. **2**). In one embodiment the Mobile Device Air IDentifier **200** is (or includes) a Radio Frequency IDentifier (RFID) transponder (also known in the art as a "tag"). The Mobile Device Air IDentifier **200** may be built-in to the CMD **25** and completely contained within the CMD, or the Mobile Device Air IDentifier **200** may be attached to the CMD with some form of adhesive to place it on the outer surface of the CMD, or the Mobile Device Air IDentifier **200** may be integrated with the battery for the CMD, where such batteries may be provided as an after-market component for the CMD. Such an attached Mobile Device Air IDentifier **200** may be affixed in such a way so as to prevent tampering, wherein such tampering may include removal of the Mobile Device Air IDentifier **200** or covering of the Mobile Device Air IDentifier **200** with a material which occludes the radio frequency signal from reaching the Mobile Device Air IDentifier **200**. Further, the Mobile Device Air IDentifier **200** may be "passive," without a power source, or it may be an "active" tag by drawing power from the CMD's power source. There are multiple advantages to the Mobile Device Air IDentifier **200** being an active RFID tag. In particular, the following advantages may be provided: (i) the detectors **37**, **38**, **39** (disclosed in FIG. **3**) may require less power to sense the RFID tags, (ii) such an active RFID tag may be sensed over a greater distance, and (iii) there may be greater accuracy in reading the identity of an active RFID tag. The Mobile Device Air IDentifier **200** may be used for routing mobile device position information by the Vehicle Service Provider (VSP) **100** to the appropriate Mobile Device Service Provider (MDSP) **130**.

Alternately, the Vehicle Detection System (VDS) **30** and CMD **25** may be operational to use another over-the-air identification and position detection technology other than RFID, such as, using acoustic methods such as ultrasound, using optical technologies such as InfraRed (IR), or other similar technologies for determining the position of the CMD relative to the VDS.

The Controllable Mobile Device (CMD) **25** may further be operational to support control software **225** (FIG. **2**) which provides the ability to control—that is, monitor, enable, disable, and report on—other services **205** provided on the CMD. The control software **225** may receive data or instructions as input from the VDS **30** via wireless connection **40** (FIG. **1**) or from the Mobile Device Service Provider (MDSP) **130** via wireless connection **50**.

Disclosed in FIG. **3** is one embodiment of the functional components that may be provided on a Vehicle Detection System (VDS) **30**. The VDS **30** may be a single hardware unit, or multiple hardware components each hosting various functions as described below. Each hardware component of the VDS **30** may be factory installed at the time a vehicle is manufactured and therefore built-in to the dashboard, engine compartment, ceiling, molding, or other parts of the vehicle, and in general, out-of-sight from users. Alternately and/or optionally, the one or more hardware components of the VDS **30** may be "after-market installed" at some point in time after the vehicle has been shipped from the manufacturer. After-market components may be visible to the user, or designed to blend-in with other parts of the vehicle, and may receive wired, or perhaps wireless power, from the vehicle's power, or they may be battery powered, or powered from some other energy source, such as, for example, solar power, wind power through vehicle movement, or possibly by converting the kinetic energy of the vehicle motion to

US 11,638,198 B2

25

electrical power, or other power sources. In one embodiment, the Vehicle Detection System (VDS) **30** base unit **35** may be configured with a single position detector/sensor **37** in a small, molded unit (also referred to herein as a "pod") which may be mounted under the dashboard of vehicle **15**, or on or near the steering column in close proximity to a fuse box thereby allowing a straightforward connection to the vehicle's power. In another embodiment, the pod may directly connected to the On Board Diagnostic (OBD) interface that is available in all US vehicles manufactured after **1996**, so as to both provide power, and provide information on the status of the vehicle **15** including whether it is powered, and therefore implying that it is in motion, or velocity information directly, such information to be used by the VDS **35** to establish the status of the vehicle.

As disclosed in FIG. **3** the Vehicle Detection System (VDS) **30** may be operational to provide a vehicle motion sensor **305** capability which senses when the vehicle is in motion. The vehicle motion sensing **305** capability may be configured to sense any motion, such as, for example, less than 1 mile per hour, or it may be configured to consider motion to be any speed over 5, or 10 miles per hour, or the sensing capability may be configurable by adjusting a control (e.g., a knob, or button, or a software configurable control) on the vehicle motion sensor to set the threshold speed limit. Examples of vehicle motion sensing **305** functionality include, but are not limited to, an accelerometer, a GPS tracking device, the speedometer built-in to the vehicle, or other similar motion sensing devices. Alternately, or in addition to, the vehicle motion sensor **305** may infer vehicle motion from power being turned on in the vehicle **15**, by conversely indicating the vehicle **15** is not in motion by the absence of power to the vehicle (the vehicle key being turned off).

Disclosed in FIG. **4**, the vehicle motion sensor **305** may report the vehicle is in operation to the Safe Driving Registration System (SDRS) **105** based purely on whether the vehicle **15** is in motion (steps **405**, **410**) or not. As such, when the vehicle **15** comes to a stop (e.g., at a traffic red light), or when the vehicle's speed drops below the minimum threshold (step **410**) (e.g., in congested traffic), then the vehicle motion sensor **305** may signal that the vehicle is no longer moving. When the vehicle **15** moves again, the vehicle motion sensor **305** may signal that vehicle motion is occurring. This moving, not moving, moving, not moving change of status, however, might intermittently enable services (e.g., text messaging) during those brief periods the driver has stopped or slowed down. It may be desirable to disable services when a vehicle is in slow traffic or stopped briefly at a traffic light. In one embodiment, if the vehicle **15** slows below the threshold speed (step **410**) and if the engine is still powered on (step **425**), the vehicle motion sensor **305** concludes the vehicle is in operation (step **420**) and waits a configured amount of time to check the motion status again in step **400**.

Alternately and/or optionally, the vehicle motion sensor **305** may report the vehicle is in operation to the SDRS **105** based on a combination of current movement or recent movement (e.g., within the past 2-4 minutes, or some configurable amount of time). If the detect traffic option (as determined in step **440**) is set in the vehicle motion sensor **305**, then the logical combination would prevent intermittent use of CMD **25** services during traffic stoplights, or in stop-and-go congested traffic whereby the vehicle motion sensor **305** would continuously report the vehicle **15** is in operation until it is no longer moving. Recent motion is calculated (step **445**) by continually updating a time variable

26

each time the vehicle motion sensor **305** determines that the vehicle is in motion **415** as the difference between the current time and the vehicle last moved time. If the vehicle speed (as determined in step **405**) is below the threshold (step **410**) and the detect traffic option (as determined in step **440**) is on, and the vehicle **15** has not moved recently, then the vehicle motion sensor **305** reports to the VDS detection engine **300** that the vehicle is not in operation in step **435**. Otherwise, if the vehicle **15** has moved recently then the vehicle motion sensor **305** reports the vehicle is in operation in step **455**.

The vehicle motion sensor **305** may report the raw data including vehicle speed, engine power state, the vehicle last moved time, and the detect traffic option to the SDRS **105** via the VSP **100** where the SDRS **105** would be operational to provide the vehicle motion sensor logic to determine whether brief traffic stops or congested traffic constitute that the vehicle is in operation, or not. Alternately and/or optionally, the vehicle motion sensor **305** may only report state changes to the SDRS **105** (e.g., the vehicle **15** is in operation, or the vehicle is not in operation), or the vehicle motion sensor may regularly and periodically report (e.g., every minute, or every few seconds, a real-time stream, or some such appropriate interval) the current status to the SDRS **105**. Alternately and/or optionally, the Service Decision System **125** may provide the vehicle motion sensor logic with the raw data transmitted from the VDS **30** to the Service Decision System via the SDRS **105**.

Returning to FIG. **3**, the Vehicle Detection System (VDS) **30** may also include a vehicle wireless network interface function **310** which supports a typical wireless local area network (WLAN), for example, Wi-Fi, or some other wireless local network capability, like, for example, Bluetooth, Wireless USB, etc. The vehicle wireless network **310** may be configured for wireless connection to one or more CMDs **25** and/or for wireless connection to the one or more position detectors and/or sensors, identified in FIG. **3** as **37**, **38**, **39** that are part of the VDS **30**. In addition, the VDS **30** also provides a service provider wireless network interface **315** which connects the VDS to the Vehicle's Service Provider (VSP) network, **60** shown in FIG. **1**, over a wireless connection **65**. The vehicle wireless network **310** may be configured to detect free-access local networks such as free-access WiFi, and automatically connect to these to download store-and-forward data to the Safe Driving Registration System (SDRS) **105**.

The Vehicle Detection System (VDS) **30** may also include a detection engine **300** (e.g., a hardware/software configuration of computational equipment) which determines whether a detected Controllable Mobile Device (CMD) **25** is within a restricted zone while the vehicle **15**. In one embodiment the detection engine **300** is in communication with one or more of a plurality of position detectors and/or sensors **37**, **38**, **39** to receive real-time position information about one or more Controllable Mobile Devices **25**. The detection engine **300** also receives motion sensing information from the vehicle motion sensor **305** and possibly engine powered on/off information from the vehicle **15**. If the vehicle motion sensor **305** uses an accelerometer to provide motion sensing information, the detection engine **300** may be operational to discern vibrations associated with vehicle motion from other motions caused by other sources such as wind, or movement within the vehicle **15**.

In one embodiment, the Vehicle Detection System (VDS) **30** may receive motion sensing information from the CMD **25**, via the Mobile Device Service Provider (MDSP), **130** which may include, but is not limited to, a GPS capability

US 11,638,198 B2

27

built-in to the CMD, or motion determination by the MDSP wireless network, such as, for example, triangulation of signals between multiple cellular radio frequency towers, or other means available in the MDSP to determine motion of the CMD. In one variation of this embodiment, the motion sensing information is determined by the MDSP **130** and relayed via the Vehicle Service Provider (VSP) **100** over wireless connection **65** to the VDS **30**, where the MDSP and VSP may be the same network service provider. In another variation, the motion sensing information may be relayed by the MDSP **130** back to the CMD **25** via wireless connection **50** and then transmitted by the vehicle wireless network **215** on the CMD to the vehicle wireless network **310** on the VDS.

The detection engine **300** further may be operational to provide the ability to define a "restricted zone" within the vehicle wherein CMDs **25** are detected and possibly services on the Controllable Mobile Device (CMD) are disabled. In one embodiment, such a restricted zone is configurable by the person who installs the Vehicle Detection System (VDS) **30** or possibly by the subscriber. The detection engine **300** of the VDS **30** may provide a wired configuration port **330**, such as, for example a serial port, a USB port, or similar interface technology, to allow a computational device, such as, for example, a personal computer, a notebook computer, a PDA, or even a mobile phone, to connect to the detection engine and provide a user interface **340** for configuring the restricted zone. The user interface (UI) may be graphical, or numerical, or some such appropriate UI. The connection between the detection engine **300** and the computational device may be wired or a wireless connection, and it may use the vehicle wireless network interface **310**, for example a Wi-Fi connection. Alternately and/or optionally, the detection engine **300** may provide a default restricted zone.

The Vehicle Detection System (VDS) **30** may further be operational to provide a Detection System Air Identifier **325**. In one embodiment the Detection System Air IDentifier **325** includes a Radio Frequency IDentifier (RFID) transponder or tag. The one or more position detectors and/or sensors **37**, **38**, **39** may be operational to read the Detection System Air IDentifier to verify that the Detection System Air IDentifier is readable, thereby deducing that the VDS base unit **35** (FIG. **1**) has not been obstructed and occluded from detecting one or more CMDs **25**. Further, the position detectors and/or sensors **37**, **38**, **39** read the Detection System Air IDentifier **325** to confirm the location of the Detection System Air IDentifier, relative to its initial location at the time of installation, and thereby confirm that the VDS base unit **35** has not been moved, which could alter the restricted zone. The Detection System Air IDentifier **325** helps prevent tampering of the VDS base unit **35**. The Detection System Air IDentifier **325** may be passive, without a power source, or it may be an active tag by drawing power from the VDS's power source. Alternately, the Detection System Air IDentifier **325** may be a similar over-the-air identification and position detection technology other than RFID.

Alternately and/or optionally, the VDS **30** may be operational to detect and identify a Controllable Mobile Device (CMD) **25** via one or more wireless signals from the CMD **25**. This includes, but is not limited to, detection and identification via the local area vehicle wireless network capability **310** in the VDS **30** and corresponding local area wireless network capability **215** in the CMD **25** over wireless connection **40** wherein the presence of a specific CMD **25** may be detected and identified. Alternately and/or optionally, the VDS **30** may be operational to receive and connect with the wireless network signal **50** (e.g., the cellular or

28

some such similar technology) from the CMD **25** intended for the MDSP **130** service provider through the MDSP's wireless network **45** wherein the VDS **30** may be operational to have the necessary encryption codes and wireless signaling technology to read the wireless network signal **50** and through that signal identify the specific CMD **25**.

The VDS base unit **35** configuration of the Vehicle Detection System (VDS) **30** may include the detection engine, **300** vehicle motion sensor **305**, Detection System Air IDentifier **325**, vehicle wireless network **310**, and service provider wireless network **315** components or functions. The VDS base unit **35** may also include one of the position detectors **37**, **38**, **39**.

As described above, the Vehicle Detection System (VDS) **30** may yet be operational to provide one or more position detectors and/or sensors **37**, **38**, **39**. In one embodiment, each position detector **37**, **38**, **39** includes a Radio Frequency IDentifier (RFID) reader. Each such RFID reader transmits a signal **380** wirelessly which any of the RFID tags in the area pick-up and in turn each tag transmits it's ID number, and possibly other data, back to the reader. Passive tags use the signal from such a reader to generate enough power for the tag to transmit the response. The VDS **30** may provide one or more RFID readers as position detectors and/or sensors **37**, **38**, **39**. A configuration of one reader could be placed in the dashboard area of a vehicle and provide approximately a circular detection area as the restricted zone. In this implementation the single position detector **37** (one RFID reader) may be implemented in the same component (a single "pod") along with all of the other VDS functions described above. Alternately, or in addition to, the single position detector **37**, could be implemented in a separate physical component from the other base unit VDS **35** functions.

Additional position detectors and/or sensors **38**, **39**, for example, a total of three detectors and/or sensors **37**, **38**, **39** placed at appropriate distances from one another, may allow the detection engine **300** of Vehicle Detection System (VDS) **30** to triangulate the exact position of a CMD **25**, by comparing relative response signal strengths, and thereby determine whether it is within a restricted zone. The triangulation logic employs standard algorithms to calculate a more accurate position of the CMD **25**. In one embodiment, the VDS **30** may use one or two detectors and/or sensors **37**, **38**, **39** to determine the approximate position of the CMD **25** by also detecting the relative strength of the RFID signals with respect to the known location of the detectors and/or sensors **37**, **38**, **39**, and thereby approximate whether the CMD is within the restricted zone. The VDS **30** may support more than three position detectors and/or sensors **37**, **38**, **39** depending on the position accuracy needed and the size of the vehicle.

Each position detector **37**, **38**, **39** may be connected to the VDS base unit **35** by a wired connection **345**, **350**, **355** for transmitting detected information to the detection engine **300** along with providing power to each of the remote position detectors and/or sensors **37**, **38**, **39**. Alternately, each position detector may provide it's own vehicle wireless network interface, such as, for example, Wi-Fi, to transmit data wirelessly **345**, **350**, **355** to and from the VDS base unit **35**. Wireless position detectors and/or sensors **37**, **38**, **39** may receive power from some other source, such as, for example, batteries, solar power, wireless power, wind power through vehicle movement, or other power sources.

Further, each position detector **37**, **38**, **39** may also be configured with a Position Detector Air Identifier **360**, **370**, **375**, such as, for example, an integrated RFID tag, within the

US 11,638,198 B2

29                                                                     30

detector which is configured to respond to the queries of other detectors and/or sensors (e.g., RFID readers). At the same time, each position detector is configured to ignore it's own Position Detector Air Identifier. FIG. **3** illustrates one embodiment of the Vehicle Detection System (VDS) **30**, wherein the Position Detector Air IDentifiers in each position detector are labeled PD1AID **360**, PD2AID **370**, and PD3AID **375**. The purpose of the other Position Detector Air IDentifiers is to provide a multi-way "heart-beat" capability for other detectors and/or sensors to confirm that each detector and/or sensor is still detectable, and that the other position detectors and/or sensors **37**, **38**, **39** are at the location they were originally installed. In a preferred embodiment the Position Detector Air IDentifiers located within each position detector are not isolated, but rather are connected to the position detector and the power source of the position detector. As such, when each Position Detector Air Identifier is polled for a heart-beat response it may be able to provide a smart-heart-beat response including status information about the detector and/or sensor itself. In addition, the VDS base unit **35** may be able to exchange other status information with each detector and/or sensor.

The Vehicle Detection System (VDS) **30** may additionally be operational to detect wireless signal **380** from one or more Controllable Mobile Devices **25** in parallel within the restricted zone and to process that data through the detection engine **300** and to transmit that data to the VPS **100** via the service provider wireless network **315** interface in an interleaved, virtually simultaneous fashion.

In one embodiment, the Vehicle Detection System (VDS) **30** may use other technology methods to detect the position of one or more CMDs **25** within a restricted zone. These include, but are not limited to, detecting the strength of an electromagnetic signal from the CMD **25**, such as, for example, a radio frequency signal, which may emanate from the Bluetooth or Wi-Fi capability on the mobile device, or from the cellular signal of the mobile device, or from a different electromagnetic signal source on the CMD **25**.

In a further embodiment, the detection engine **300** of the Vehicle Detection System (VDS) **30** may compare the absolute position of the Controllable Mobile Device (CMD) **25** to the absolute position of the VDS base unit **35** to determine if the CMD is within the relative boundary of the restricted zone. In this configuration, the absolute position of the CMD **25** may be determined by multiple methods, including, but not limited to, the Mobile Device Service Provider (MDSP) **130** using the signal strength from its wireless network base stations **55** to triangulate the position of the CMD, or by a GPS location capability built-in to the CMD **25** in operation with a GPS network and the MDSP **130**. Further, in this configuration, the absolute position of the VDS **30** may be determined by multiple methods, including, but not limited to, the Vehicle Service Provider (VSP) **100** using the signal strength from its wireless network base stations **70** to triangulate the position of the VDS **30**, or by a GPS location capability built-in to the VDS **30** in operation with a GPS network and the VSP **100**. Both the MDSP and the VSP, or the GPS network, are operational to transmit the determined absolute position, probably stated in geographical coordinates, to the VSP via wireless network connection **65** where the detection engine compares the absolute positions of the CMD **25** and VDS **30** with the relative boundary of the restricted zone.

In yet another embodiment, the Vehicle Detection System (VDS) **30** may detect a CMD **25** through conduction of an electrostatic charge by the user holding the mobile device and touching the steering wheel, or similar part of the vehicle in the driver's seat, thereby creating an electrostatic connection leading to the deduction that the driver user is holding the mobile device within the restricted zone.

Disclosed in FIG. **5** is one embodiment of the functional components that may be provided in the Safe Driving Registration System (SDRS) **105**. The SDRS **105** includes a safe driving engine **500** (e.g., a hardware/software configuration of computational equipment) which receives the vehicle plus mobile detected information about the vehicle **15** and possibly Controllable Mobile Device (CMD) **25** position information from the Vehicle Detection System (VDS) **30** via the Vehicle Service Provider (VSP) **100**. The safe driving engine **500** stores the received information, along with information identifying the registered vehicle **15**, the registered CMDs **25**, and the subscriber, in the Safe Driving Database **110**. Further, the safe driving engine **500** provides user interfaces **115** for subscribers, system administrators, and possibly data subscribers to access data stored in the Safe Driving Database **110**, configure preference and service control settings, configure alert message options **510**, and to generate reports **505**. The user interfaces **115** provided by the safe driving engine **500** may be accessed by computational devices, such as, for example, a personal computer, a personal digital assistant (PDA), a smart phone, a mobile phone, or other similar device equipped with an Internet connection, which may also provide an Internet web browser.

The safe driving engine **500** is also operational to transmit information from the Safe Driving Database **110** to the Mobile Device Service Provider (MDSP) **130** via the Vehicle Service Provider (VSP) **100** through various land based and wireless based communication networks and/or to receive information from the MDSP **130** which may include, for example, usage data for specific mobile services. With mobile usage data, the safe driving engine **500** may correlate that data with vehicle operational data and, possibly CMD **25** restricted zone position data, and/or perform other calculations on the data.

Disclosed in FIG. **6** is one embodiment of the functional components that may be provided in a Service Decision System **125**. The Service Decision System **125** may include a service decision engine **600** (e.g., a hardware/software configuration of computational equipment) which receives vehicle plus mobile detected information. In one embodiment, the service decision engine is in direct communication with the Mobile Device Service Provider (MDSP) **130** (shown in FIG. **1**) wherein the MDSP **130** is allowed to access the Safe Driving Registration System (SDRS) **105** and either queries the SDRS for update vehicle operational use and restricted zone data from the centralized Safe Driving Database, or the MDSP registers with the SDRS for regular and periodic updates (e.g., every minute, or every few seconds, a real-time stream, or some such appropriate interval) of the data to be sent by the SDRS. Alternately, or in addition to, the Service Decision System **125**, via the MDSP **130**, may receive the data to be stored and forwarded in some other timing arrangement.

Alternately and/or optionally, the Service Decision System **125** may be in direct communication **120** with the Safe Driving Registration System (SDRS) **105** to receive the vehicle plus mobile detected information.

The service decision engine **600** may also be operational to receive input service control settings **605** which may include, but are not limited to, parameters defined by state or local laws, parameters set by the Mobile Device Service Provider (MDSP) **130**, parameters set by individual subscribers for all users of CMDs **25** for the subscriber, and/or

US 11,638,198 B2

31                                                                                    32

individual users within a group managed by the subscriber. The service control settings **605** may include, but are not limited to, parameters that define which service the service decision engine **600** controls for which users (e.g., voice calls, text messaging, video calls or messaging, Internet access, games, etc.); how those services are controlled (e.g., disable the service when the vehicle is operational, disable the service when the Controllable Mobile Device (CMD) **25** is within the restricted zone, enable the service when the CMD moves outside of the restricted zone, enable the service when the CMD is within the restricted zone but send a warning or reminder message to the CMD, as well as other possible control scenarios); what time frames some services may be enabled or disabled, as well as other control preferences.

Further, the service control settings **605** may be stored and managed in operations with the service decision engine of the Service Decision System **125**, or in direct operation with the SDRS **105**.

Disclosed in FIG. **7** is a flowchart illustrating some of the steps in the service decision engine **600** to determine whether to enable or disable services. The service decision engine **600** may receive vehicle plus mobile detected information and service control settings (step **705**). If the vehicle **15** is not in operation (as determined in step **710**) the service decision engine **600** sends an enable services directive to either the MDSP **130** or the SDRS **110**, depending on how it is configured (disclosed in FIG. **1**). Conversely, if the vehicle is in operation (as determined in step **710**) and the option to check for CMD **25** positioning relative to the restricted zone (step **715**) is off, then the service decision engine **600** sends a disable services directive (step **725**) to either the MDSP **130** or the SDRS **110**. Alternately, if the vehicle **15** is in operation (as determined in step **710**), the option to check for CMD positioning is on (step **715**), and the CMD **25** is within the restricted zone of the vehicle (as determined in step **720**), then the service decision engine **600** sends a disable services directive in step **725**, or if the CMD is outside the restricted zone, then the service decision engine **600** sends an enable services directive in step **730**. Regardless, after the service decision engine **600** sends the appropriate enable/disable service directive, it waits a configured amount of time in step **700** (e.g., a minute or two, or perhaps even seconds) before repeating the process and receiving updated vehicle plus mobile detected information in step **705**. The service directive may specify individual services, may direct all services (except emergency response services), may direct disabling the battery on the CMD (which in turn, would prevent operation of the CMD), may directly disable all functions on the CMD, or may send a warning message to the user of the CMD and/or to the subscriber.

In one embodiment, the service directive is transmitted in a real-time or near-continuous stream to the MDSP **130** or SDRS **105**, or alternately could be stored and forwarded in some other timing arrangement.

Alternately, the Service Decision System **125** and service decision engine **600** may be provided in any other suitable component of the mobile service control system **10**, including, but not limited to, the mobile device control software **225** of the CMD **25** (as illustrated in FIG. **2**).

FIG. **8** shows one embodiment of the Vehicle Detection System (VDS) **30** with position detection capabilities in a passenger vehicle **15**. A single position detector **37** is shown along with the circular symmetric detection area **800**. In practice, however, the perimeter of the detection coverage area may be irregular and influenced by the dashboard, driver's door, the seats, and materials used in and around the driver's seat of the vehicle. In a single position detector **37** configuration, the restricted zone **805** for detecting an Controllable Mobile Device (CMD) **25** is the same as the actual perimeter of the circular symmetric detection area. Further, the VDS **30** may provide the ability to adjust the extent of the restricted zone **805** by adjusting the power level of the position detector **37**, such as, for example, adjusting the RFID reader. For example, in some deployments the restricted zone may only extend to the edge of the driver's seat, whereas in others it may extend to the middle of the front passenger's seat and behind the driver's seat as illustrated in FIG. **8**.

Disclosed in FIG. **9** is one embodiment of the Vehicle Detection System (VDS) **30** in a passenger vehicle **15** with three position detectors and/or sensors **37**, **38**, **39** with their unconstrained circular symmetric detection areas **900**. In this type of configuration the three detectors and/or sensors **37**, **38**, **39** can be used to triangulate an accurate position of the Controllable Mobile Device (CMD) **25**. The overlap of the coverage areas from the three position detectors and/or sensors **37**, **38**, **39** defines the restricted zone **905**, which is illustrated with a darker dashed line.

Referring again to FIG. **1**, the mobile services control system **10** disclosed herein, including, but not limited to, the Vehicle Detection System (VDS) **30**, the Vehicle Service Provider (VSP) **100**, the Safe Driving Registration System (SDRS) **105**, the Safe Driving Database **110**, the Mobile Device Service Provider (MDSP) **130**, the Service Decision System **125**, and the Controllable Mobile Device (CMD) **25**, are all operational to allow emergency, or other designated priority communications, including voice calls, video calls, text messages, emails, or other similar communications, at all times even when the system has determined that one or more services should be disabled due to vehicle operational status or the position of a CMD within a restricted zone of a vehicle.

Disclosed herein is another embodiment of the mobile services control system **10** that is well suited for vehicles **15** that are primarily operated by a single driver-operator, or driven or operated by multiple driver-operators who are scheduled so that at any particular time, the driver-operator of a corresponding vehicle **15** is known with high confidence (e.g., commercial drivers of vehicles such as trucks and taxi cabs, operators of public transportation such as buses or trains, and drivers of government vehicles). Since such a driver-operator of a vehicle **15** is often the primary user of a unique CMD **25** or unique CMD's, knowledge of the motion of the vehicle **15** in conjunction with knowledge of the operator of that vehicle (perhaps at a specific time) in conjunction with knowledge of a unique identifier of the operator's CMD **25** (such as a cell phone number of the CMD(s), or Mobile Device Air Identifier of the CMD(s)), enables the Mobile Services Control System **10** to provide notifications to appropriate wireless carrier network equipment for activating and/or deactivating CMD services (e.g., texting, etc.). In particular, such activation and/or deactivation may be substantially solely dependent upon a determination of whether the vehicle **15** is moving. In this embodiment, the Safe Driving Registration System **105** (FIG. **1**) is configured through one or more of the User Interfaces **115** (by a person and/or an automated input) with information specific to a unique vehicle **15** having with a Vehicle Detection System (VDS) **30**, or information specific to a plurality of vehicles **15** each having a Vehicle Detection System (VDS's) **30**, wherein the information includes: (i) at least one primary operator of vehicle **15**, or if multiple

US 11,638,198 B2

33

operators are scheduled for the vehicle, information specifying the times that a specific one of the operators will be operating the vehicle 15. Additionally, the Safe Driving Registration System 105 is provided (e.g., via a User Interface 115) with CMD information identifying which CMD 25 or CMD's 25 are associated with each of the operator(s), as well as information as to what incoming and outgoing calls, text messages or other information should be allowed for emergency use or otherwise while services to such CMD(s) are being controlled by the mobile services control system 10. Note that in this embodiment, vehicle 15 incorporates a Vehicle Detection System (VDS) 30 that may or may not incorporate a Detection Engine 300 since the requirement you detect the location or position of an operator's CMD 25 within the vehicle occupant enclosure 20 may not be necessary.

Referencing FIG. 1 and the flowchart in FIG. 10, in step 950, a user (e.g., subscriber) provides input for configuring the Safe Driving Registration System 105 with the identification of the driver-operator(s) associated with each particular vehicle 15 (or VDS 30 therein), the identification(s) of each such vehicle (or VDS 30 therein), as well as (if known) the times that each such driver-operator is scheduled to operate a corresponding vehicle 15. Additionally, identifiers for the each of the CMDs 25 (e.g., cell phone numbers and wireless carrier provisioning the CMD) that is used by each of the driver-operators and that are desired to be controlled 950 are also input to the Safe Driving Registration System 105. For each of the VDSs 30 (which in the present embodiment need not include the detection engine 300, nor any of the position detectors), in step 951, the VDS monitors the condition of its vehicle 15 (for instance whether the vehicle is moving or not through methods described elsewhere in this specification), and intermittently communicates the condition of the vehicle through wireless connection 65 to base station 70 and wireless network 60 to Vehicle Service Provider 100, and thereby to the Safe Driving Registration System 105 and Safe Driving Database 110. The intermittent connection between the VDS 30 and the VSP 100 may be specified so that a very limited amount of information is transmitted infrequently (every minute or several minutes), so that even though the VDS reports the condition of the vehicle, the power requirements of the VDS are minimal, potentially enabling a solar-powered or battery powered VDS that does not require connection to vehicle 15 power. When, through this connection, the VDS 30 indicates to the Safe Driving Registration System 105, that the vehicle 15 is not moving, then in step 960, the Service Decision System 125 indicates within the Safe Driving Database 110 that an associated CMD 25 (for a potential operator of the vehicle) does not require disabling by the Mobile Device Service Provider 130. However, when the VDS 30 indicates vehicle motion through this connection, then in step 952, the Service Decision System 125 utilizes the information associated with that vehicle 15 that is within the Safe Driving Registration System 105 and Safe Driving Database 110, to determine if a particular one or more CMDs 25 associated with this vehicle should have one or more services disabled. If the CDMs 25 are to be disabled, then in step 958 data indicative of such disablement is stored in the Safe Driving Database 110. Then in step 970, the mobile device service provider 130 for the CMD 25 obtains (via notification or polling) to disable services for the CMD. In step 959, the information within the Safe Driving Database, including information regarding allowable emergency numbers for a specific CMD, is made available to the Mobile Device Service Provider (MDSP) through the Internet, or other

34

wired or wireless services to indicate that the MDSP should disable the CMD associated with vehicle 15. Alternately, in step 959, the information contained in the Safe Driving Database regarding a particular CMD and the associated vehicle may be transmitted via the Internet or other wired or wireless services directly to the MDSP directing the MDSP to disable the CMD associated with vehicle 15. Optionally, as an alternative step to step 952, the system 10 may utilize information derived from comparing the relative strength of signals received by Wireless Base Station 55 and Wireless Base Station 70, and the locations of Wireless Base Station 55 and Wireless Base Station 70 to determine if the CMD 25 is proximal to VDS 30 of a specified vehicle 15, and therefore determine whether the CMD should be disabled or whether that CMD 25 is distant from the VDS 30 of the specified vehicle 15, and therefore even if vehicle 15 is moving, this CMC should not be disabled. Optionally, as an alternative step to step 952, the system 10 may incorporate a detection engine 300, through techniques described elsewhere in this specification to determine if a particular CMD associated with vehicle 15 is within vehicle 15 and therefore should be disabled. It is possible that the system 10 described in this embodiment disables a CMD that is not within the associated vehicle 15. In this instance, the system 10 may allow such disablement of services to be overridden through a variety of methods that may include input by an administrator or subscriber of the control services offered by the system 10 for a CMD account authorizing an override of the disabled CMD. Alternatively/optionally, the system 10 may allow the transmittal of a text or voice message by the CMD to a telephone number associated with the system 10 that can authorize an override for the CMD (CMD User Override). Optionally, if the CMD sends a text or voice message that authorizes an override of the disabled CMD, the system 10 may send a text, email or voice message to the administrator or subscriber of the CMD account indicating that a CMD User Override has been executed as well as information as to the condition of vehicle 15 associated with the CMD at the time of the CMD User Override, so as to provide information to the administrator or subscriber of the account. Note that such overrides may be logged for identifying abuse of the CMD User Override. In the event of CMD User Override abuse, the administrator or subscriber of the CMD account can disable the CMD User Override for a specific CMD via user interface 115.

The present disclosure has been presented for purposes of illustration and description. Further, the description herein is not intended to limit the present disclosure to the form disclosed herein. Consequently, variation and modification commiserate with the above teachings, within the skill and knowledge of the relevant art, are within the scope of the present disclosure. The present disclosure is further intended to explain the best mode presently known of practicing the invention as recited in the claims, and to enable others skilled in the art to utilize the present disclosure, or other embodiments derived therefrom, e.g., with the various modifications required by their particular application or uses of the present disclosure.

What is claimed is:

1. An electronic transponder device, comprising:
a battery module;
an accelerometer module configured to generate motion data indicative of one or more of a vibration, a movement, and an acceleration of the electronic transponder device;
a memory module configured to store at least a portion of the motion data; and

US 11,638,198 B2

**35**

a controller electrically connected to the accelerometer module, the memory module, and the battery module, the controller being configured to:

establish a communication link to a cellular phone, wherein the cellular phone is configured to transmit and receive voice phone calls, transmit and receive text messages and provide internet access, wherein the communication link is configured to be established using a short-range wireless communication protocol including sending information indicative of an electronic transponder identification to the cellular phone, wherein the electronic transponder identification is registered to a vehicle by virtue of a data record stored in the cellular phone or an external network based storage,

receive the motion data from the accelerometer module as received motion data,

transmit the received motion data to the memory module wherein the memory module is configured to store at least a portion of the received motion data,

receive, from the cellular phone, information indicative of an identification of the cellular phone,

receive from the memory module at least a portion of the stored motion data as retrieved motion data, and

transmit, using the established communication link, at least a portion of the retrieved motion data,

wherein the electronic transponder device is configured to be affixed to a portion of a passenger compartment of a vehicle in a predetermined orientation.

**2**. The electronic transponder device of claim **1**, wherein the short-range wireless communication protocol includes a Bluetooth protocol.

**3**. The electronic transponder device of claim **1**, wherein the electronic transponder device being configured to detect motion of the electronic transponder device as motion data indicative of one or more of vibration, movement, and acceleration upon exceeding a predetermined threshold.

**4**. A system configured for modifying behavior a vehicle operator, the system comprising:

an electronic transponder device, comprising:

a battery module;

an accelerometer module configured to generate motion data indicative of one or more of a vibration, a movement, and an acceleration of the electronic transponder device;

a memory module configured to store at least a portion of the motion data;

a controller electrically connected to the accelerometer module, the memory module, and the battery module, the controller being configured to:

establish a communication link to a controllable mobile device using a short-range wireless communication protocol including sending information indicative of an electronic transponder identification to the controllable mobile device, wherein the electronic transponder identification is registered to a vehicle by virtue of a data record stored in the controllable mobile device or an external network based storage,

receive the motion data from the accelerometer module as received motion data,

transmit the received motion data to the memory module wherein the memory module is configured to store at least a portion of the received motion data,

**36**

receive, from the controllable mobile device, information indicative of an identification of the controllable mobile device,

receive from the memory module at least a portion of the stored motion data as retrieved motion data, and

transmit, using the established communication link, at least a portion of the retrieved motion data,

wherein the electronic transponder device is configured to be affixed to a portion of a passenger compartment of a vehicle in a predetermined orientation;

a network based data processing system comprising a data storage system configured to receive data from the controllable mobile device;

at least one electronic processor electrically connected to the data storage system being configured to:

a. receive first data including information indicative of: ai.) global position system (GPS) information from the controllable mobile device, and aii.) vehicle operator interaction with the controllable mobile device or use the controllable mobile device in a distractive manner,

b. receive second data including information indicative of: bi.) the retrieved motion data, wherein the first data and the second data are received in a single data communication or in multiple data communications, and wherein the multiple data communications are received by the at least one electronic processor at varying time intervals, and

c. generate a report, based on the first data and the second data, the report includes information indicative of vehicle operator interaction with the controllable mobile device or use of the controllable mobile device in a distractive manner and information indicative of vehicle operation.

**5**. The system of claim **4**, wherein short-range wireless communication protocol includes a Bluetooth protocol.

**6**. The system of claim **4**, wherein the data storage system is configured to receive at least a portion of the first data and the second data.

**7**. The system of claim **4**, wherein the information indicative of an identification of a controllable mobile device comprises a unique identifier of the controllable mobile device.

**8**. The system of claim **4**, wherein the information indicative of an identification of a vehicle comprises a unique identifier of the electronic transponder device.

**9**. The system of claim **4**, wherein the report further comprises a location of the controllable mobile device correlated to the vehicle operator interaction with the controllable mobile device or use of the controllable mobile device in a distractive manner.

**10**. The system of claim **4**, wherein the report further comprises one or more of: (i) a location of the controllable mobile device correlated the vehicle operator interaction with the controllable mobile device or use the controllable mobile device in a distractive manner, (ii) a condition of the vehicle, (iii) a speed of the vehicle, (iv) an acceleration of the vehicle, (v) a deacceleration of the vehicle, (vi) direction of acceleration of the vehicle, (vii) direction of deacceleration of the vehicle, and (viii) GPS tracking information.

**11**. The system of claim **4**, wherein the report is accessed by a third party.

**12**. The system of claim **11**, wherein the report the third party is an insurance company.

**13**. The system of claim **4**, further comprising disabling one or more services to the controllable mobile device.

US 11,638,198 B2

37

14. The system of claim 4, wherein the report includes correlated information indicative of vehicle operator interaction with the controllable mobile device or use the controllable mobile device in a distractive manner, information indicative of vehicle operation, and location information of the global position system (GPS) information from the controllable mobile device.

15. An electronic transponder device, comprising:

a battery module;

an accelerometer module configured to generate accelerometer data indicative of one or more of a vibration, a movement, and an acceleration of the electronic transponder device;

one or more electric components or devices in electrical communication with the accelerometer module, wherein the one or more electric components or devices being configured to:

establish a communication link to a wireless phone configured to transmit and receive text messages, transmit and receive voice calls, and provide internet access, the communication link is configured to be established using a short-range wireless communication protocol including sending information indicative of an electronic transponder identification to the wireless phone, wherein the electronic transponder identification is registered to a vehicle by virtue of a data record stored in the wireless phone or an external network based storage, and

transmit at least a portion of the accelerometer data to the wireless phone,

wherein the electronic transponder device is configured to be affixed to a portion of a passenger compartment of a vehicle in a predetermined orientation.

16. The electronic transponder device of claim 15, wherein the short-range wireless communication protocol includes a Bluetooth protocol.

17. The electronic transponder device of claim 15, further comprising a network distributed computer system configured to generate a report, based on at least a portion of the accelerometer data.

18. The electronic transponder device of claim 17, wherein the report comprises one or more of: (i) a location of the wireless phone correlated to a vehicle operator interaction with the wireless phone or use the wireless phone in a distractive manner, (ii) a condition of the vehicle, (iii) a speed of the vehicle, (iv) an acceleration of the vehicle, (v) a deacceleration of the vehicle, (vi) direction of acceleration of the vehicle, (vii) direction of deacceleration of the vehicle, and (viii) GPS tracking information.

19. A system configured for modifying behavior a vehicle operator, comprising:

an electronic transponder device, comprising:

a battery module;

38

an accelerometer module configured to output data indicative of one or more of a vibration, a movement, and an acceleration of the electronic transponder device;

a controller electrically connected to the accelerometer module configured to:

establish a communication link to a controllable mobile device using a short-range wireless communication protocol, wherein the controllable mobile device is configured to transmit and receive text messages, transmit and receive voice communications, and provide internet access,

transmit, using the established communication link, at least a portion of the accelerometer data to the controllable mobile device,

a network based data processing system comprising a data storage system configured to receive data from the controllable mobile device;

at least one electronic processor electrically connected to the data storage system being configured, wherein the system is further configured to:

receive the accelerometer data, and

generate a report, based on at least a portion of the data, the report includes information indicative of vehicle operator interaction with the controllable mobile device or use of the controllable mobile device in a distractive manner and information indicative of vehicle operation.

20. The system of claim 19, wherein the report further comprises a location of the controllable mobile device correlated to the vehicle operator interaction with the controllable mobile device or use of the controllable mobile device in a distractive manner.

21. The system of claim 19, wherein the report further comprises one or more of: (i) a location of the controllable mobile device correlated the vehicle operator interaction with the controllable mobile device or use the controllable mobile device in a distractive manner, (ii) a condition of a vehicle, (iii) a speed of a vehicle, (iv) an acceleration of a vehicle, (v) a deacceleration of a vehicle, (vi) direction of acceleration of a vehicle, (vii) direction of deacceleration of a vehicle, and (viii) GPS tracking information.

22. The system of claim 19, wherein the report is generated for an insurance company.

23. The system of claim 19, further comprising disabling one or more services to the controllable mobile device.

24. The system of claim 19, wherein the report includes correlated information indicative of vehicle operator interaction with the controllable mobile device or use the controllable mobile device in a distractive manner, information indicative of vehicle operation, and location information of a global position system (GPS) information from the controllable mobile device.

*    *    *    *    *